# EXHIBIT E

**Brandwatch Master Subscription Agreement – Last updated 15 April 2019**

1. **Definitions**

"**Agreement**" means these terms and conditions, the <u>Service Level Agreement</u>, and any Order.

"**Applicable Law**" means any legally binding obligation on a party, including statutes, rules, regulations, codes, court rulings, or any other binding requirement.

"**Brandwatch**", "**we**" "**us**", or "**our**" means Runtime Collective Limited (doing business as Brandwatch), with company number 03898053.

"**Brandwatch Data**" means any data in Brandwatch's database that Brandwatch uses in providing the Services, excluding Customer Data.

"**Claim**" means any claim, action, suit, dispute, or proceeding.

"**Contract Year**" means the period starting at the beginning of the effective date of this agreement and ending on the first anniversary of that date and each subsequent 12 month period thereafter, provided that the last contract year starts on the last anniversary of the effective date and ends on termination of the Agreement.

"**Customer**" means the party identified as a customer on an Order.

"**Customer Data**" means data that Customer uploads via Brandwatch's API (or otherwise makes available to Brandwatch) for the purpose of Brandwatch processing that data on Customer's behalf.

"**Indemnitees**" means with respect to either party, that party, its corporate affiliates, and its own and its corporate affiliates' own directors, officers, employees, agents, and other representatives.

"**Losses**" means any losses, damages, liabilities, awards, and costs (including court costs and reasonable attorneys' fees) related to a Claim.

"**Order**" means an ordering document specifying the products or services to be provided to Customer by Brandwatch or a third party.

"**Report**" means a customised report from Brandwatch's research team created for Customer.

"**Services**" means the services that Brandwatch provides to Customer as set out on the Order.

"**Term**" is defined in Section 7.

"**Third Party Services**" means the products or services that a third party is to provide to Customer as specified on an Order.

"**User**" means an individual that Customer (directly or indirectly) has authorised to use the Services and/or the Third Party Services.

2. **The Services**

2.1.    **The Services:** This Agreement sets out the terms of the contract between the Customer and Brandwatch and the Services Brandwatch provides, including any Brandwatch Data that Customer accesses related to the Services.

2.2.    **Responsibility:** During the Term, Brandwatch will: (a) provide the Services with reasonable skill and care; (b)

1

not make a material adverse change to the functionality of the Services; (c) provide the Services in material accordance with any descriptions of the Services referred to on an Order; and (d) process any personal data within Customer Data (if any) in accordance with the Data Processing Addendum available at https://www.brandwatch.com/wp-content/uploads/2018/03/BW-Data-Processing-Addendum-Final-signed.pdf. Other than as set out in this Agreement, all other warranties, conditions, and representations, whether express or implied, are excluded, *subject to Applicable Law*.

2.3.    **Third Party Services:** An Order may contain obligations in respect of Services and obligations in respect of Third Party Services. Where an Order specifies Services and Third Party Services, the obligation: (i) to provide Services creates a contract between Brandwatch (as principal) and Customer in respect of such Services (and that contract is this Agreement); and (ii) to provide Third Party Services is a contract between the third party (as principal) and Customer (to provide Third Party Services to Customer on the terms that are in place between Customer and the third party). Brandwatch is only responsible for its own Services and not any Third Party Services.

3.    Use of the Services

3.1.    **Responsibility:** Customer: (a) is responsible for its compliance with this Agreement and will procure that each User complies with the terms of this Agreement as if that User were Customer; (b) will comply with the Twitter Terms of Service, usually at http://twitter.com/tos, and the Youtube Terms of Service, usually at https://www.youtube.com/t/terms; and (c) has the right, title, permissions, and interest in the Customer Data to make it available to Brandwatch for processing.

3.2.    **User protection:** Customer will not: (a) knowingly display, distribute, or otherwise make Brandwatch Data available to any person or entity that it reasonably believes may use Brandwatch Data in a manner that would have the potential to be inconsistent with that individual's reasonable expectations of privacy; (b) conduct any research or analysis that isolates a small group of individuals or any single individual for unlawful or discriminatory purposes; (c) use Brandwatch Data to target, segment, or profile any individual based on health, negative financial status or condition, political affiliation or beliefs, racial or ethnic origin, religious or philosophical affiliation or beliefs, sex life or sexual orientation, trade union membership, data relating to any alleged or actual commission of a crime, or any other sensitive categories of personal information prohibited by Applicable Law; or (d) without Brandwatch's prior written consent, but subject to Applicable Law, display, distribute, or otherwise make Brandwatch Data available to any member of the US intelligence community or any other government or public-sector entity.

3.3.    **Restrictions:** Customer will not: (a) sell, resell, license, sublicense, distribute, or otherwise make the Services (or the results of the Services, including Brandwatch Data) available to anybody other than its Users for their own internal use, unless stated otherwise on an Order; (b) subject to Applicable Law, attempt to reverse-compile, disassemble, reverse engineer, or otherwise reduce to human-perceivable form any part of the Services; (c) use the Services or any Brandwatch Data to violate Applicable Law, including Applicable Law about data protection, privacy, or information security; or (d) purposefully interfere with or disrupt the performance of the Services, including spamming, hacking, and violating Brandwatch's API rate limits.

3.4.    **Password protection:** Each party is responsible for using reasonable efforts to ensure that any User IDs and passwords required for Users to use Services are kept safe and confidential. Subject to Applicable Law, each party will promptly notify the other party upon discovery if the security of a User ID or password may be or is compromised.

3.5.    **Removal of Brandwatch Data:** A licensor or Applicable Law may require Brandwatch to remove personal data within any Brandwatch Data. In such cases, Brandwatch will notify Customer of the impacted Brandwatch Data that requires removal and Customer will promptly remove such data from its systems, whether during or after the Term.

4.    Fees

4.1.    **Fees:** Customer will pay the fees for the Services set out in an Order. The fees for the Services are exclusive of legally applicable taxes, levies, duties, or similar governmental assessments, including goods and services, value-

added, withholding, and sales taxes. Customer will provide Brandwatch with the information it reasonably requires to send an invoice. All fees are invoiced annually in advance, unless stated otherwise on an Order.

4.2.    **Orders and Third Party Services:** Customer will pay: (a) Brandwatch the fees for the Services and any Third Party Services set out on an Order which Brandwatch sends to Customer (for Third Party Services, Brandwatch collects the fees for Third Party Services on the third party's behalf); and (b) the fees for the Services set out on an Order that a third party sends to Customer, and in such case, the third party collects the amounts due to Brandwatch on Brandwatch's behalf.

**5. Confidential Information**

5.1.    **Confidential Information:** "**Confidential Information**" is any information that a party discloses to the other party that is marked as confidential or that a reasonable person would understand to be confidential (including trade secrets). Confidential Information does not include any information that: (a) is or becomes generally known to the public without breach of any obligation owed to the disclosing party; (b) the receiving party knew prior to its disclosure by the disclosing party without breach of any obligation owed to the disclosing party; (c) a third party made available to the receiving party without breach of any obligation owed to the disclosing party; or (d) the receiving party independently developed.

5.2.    **Keep in confidence:** The receiving party will keep the Confidential Information of the disclosing party confidential for the Term and for two years after the end of the Term, provided that if the Confidential Information contains a party's trade secrets, then those trade secrets will remain confidential until they are no longer trade secrets. The receiving party will only use the disclosing party's Confidential Information for performing its obligations under this Agreement or using the Services. Nothing in this section 5 prevents the receiving party from disclosing the disclosing party's Confidential Information: (a) to its corporate affiliates, legal advisers, accountants, potential investors, or other professional advisers where required (collectively, "**Permitted Recipients**"), provided that the disclosing party remains responsible for its obligations and for the Permitted Recipients' use and disclosure of the Confidential Information; or (b) if required to disclose it under Applicable Law, provided that the receiving party will inform the disclosing party of the disclosure requirement, if legally permitted, as soon as reasonably practicable.

**6. Intellectual property**

6.1.    **Intellectual property rights:** Brandwatch or its licensors owns all intellectual property rights in the Services and the Brandwatch Data, including any queries that Brandwatch generates or writes as part of the Services. Other than as set out elsewhere in this Agreement, Customer is not granted any rights to Brandwatch's intellectual property rights.

6.2.    **Reports:** Customer owns any Report; provided that the rights to any Brandwatch Data in a Report are granted to Customer under a worldwide, non-exclusive, non-transferable, royalty-free licence to use the Brandwatch Data and the Report in accordance with this Agreement.

6.3.    **Brandwatch Data Licence:** Brandwatch grants to Customer a worldwide, non-exclusive, non-transferable, royalty-free, licence to download, copy, or otherwise remove Brandwatch Data from Brandwatch's systems, in accordance with this Agreement.

6.4.    **Customer Data Licence:** Customer grants to Brandwatch a non-exclusive, royalty-free licence to process Customer Data for the purposes of providing the Services.

6.5.    **User feedback:** Brandwatch may, and Customer grants Brandwatch the right to, irrevocably reproduce, distribute, sell, incorporate into the Services, or otherwise exploit any suggestion, enhancement request, recommendation, correction, or other feedback ("**Feedback**") that Customer or its Users provide related to the use of the Services. Customer will obtain for Brandwatch the rights in any Feedback that its Users provide in connection with the use of the Services.

**7. Term and termination**

7.1. **Term:** This Agreement begins when it is signed by the parties or agreed to via an Order, and it continues until all Orders have expired or been terminated in accordance with the terms of this Agreement.

7.2. **Mutual termination:** A party may terminate this Agreement at any time on written notice to the other party if: (a) the other party is in material breach and, if remediable, the breach is not remedied within 30 days of being notified in writing of the breach; or (b) the other party begins insolvency proceedings, becomes the subject of a petition in liquidation, or any other proceeding relating to insolvency, liquidation, bankruptcy, or assignment for the benefit of creditors (including similar proceedings under Applicable Law); or (c) the other party makes an arrangement with its creditors related to concerns about insolvency (including similar proceedings under Applicable Law). If this Agreement is governed by New South Wales law, Brandwatch's right to terminate in (b) and (c) above is limited by the Corporations Act 2001.

7.3. **Accrued rights and survival:** A party's accrued rights and liabilities are not impacted by termination of this Agreement. Sections 1, 3.1, 3.3, 3.5, 5, 6, 7, 8, 9, and 10 survive termination of this Agreement.

**8. Exclusions and limitations of liability**

### ***Please read sections 8.1-8.3 as they exclude/limit each party's liability***

8.1. **What the parties are liable for:** Nothing in this Agreement excludes or limits a party's liability for any Losses that cannot be excluded or limited under Applicable Law (including fraud or willful misconduct). If this Agreement is governed by German law, then the Losses that cannot be excluded or limited under Applicable Law are fraud, wilful misconduct, gross negligence, or damages resulting from death or physical injury, or damages to a person's health).

8.2. **Losses a party is liable for:** Subject to sections 8.1 and 8.3, a party is only liable for Losses that the other party suffers as a direct and reasonably foreseeable result of a party's breach of its obligations under this Agreement. Other than as set out in section 8.1 and the previous sentence, neither party is liable to the other party for any other Losses of any kind. If this Agreement is governed by New South Wales law and the *Competition and Consumer Act 2010* applies, then, if Brandwatch is entitled to do so, Brandwatch's liability will be limited to at its option to: (a) the supply of the Services again; or (b) the payment of the cost of having the Services supplied again.

8.3. **Liability cap:** Subject to sections 8.1, 8.2, and 10.10, each party's total liability, however arising, is capped at: (a) the amounts set out in the table below for Claims in a Contract Year; and (b) 110% of the fees for the Services incurred in the first Contract Year, for Claims outside of a Contract Year.

| Fees for the Services in a Contract Year | Liability cap |
|---|---|
| Less than £100,000 | 110% of the fees for Services incurred in that Contract Year |
| £100,001 - £1,000,000 | Two times the fees for Services incurred in that Contract Year |
| £1,000,001 or greater | Three times the fees for Services incurred in that Contract Year |

**9. Indemnity**

9.1. **Brandwatch's indemnity:** Brandwatch will indemnify Customer's Indemnitees against Losses arising out of a third party Claim against Customer that Customer's use of the Services infringes the intellectual property rights of a third party. The indemnity does not apply if the Claim is based on Customer's use of the Services in violation of its obligations under this Agreement. Where there is an indemnified Claim, Brandwatch: (i) may secure the right for Customer to continue using the Services or (ii) replace or modify the Services so that they become non-infringing. If (i)

4

and (ii) are not reasonably available, Brandwatch may terminate the infringing Services on 30 days' written notice to Customer and provide a pro rata refund of any prepaid fees for the terminated Services that were not provided.

9.2.    **Customer's indemnity:** Customer will indemnify Brandwatch's Indemnitees against Losses arising out of a third-party Claim against Brandwatch that Customer breached section 3.1(c) or that the Customer Data infringes the intellectual property rights of a third party.

9.3.    **Indemnity process:** The indemnified party will give the indemnifying party prompt written notice of any Claim and sole control to defend or settle the Claim. The indemnified party will use its commercially reasonable efforts to mitigate its Losses.

**10. General**

10.1.   **Privacy:** Brandwatch processes User data in accordance with its [Privacy Statement](#).

10.2.   **Rules of interpretation:** The words "include" and "including" are deemed to have the words "without limitation" following them; and references to "will" are to be construed as having the same meaning as "shall".

10.3.   **Force Majeure:** Neither party is liable for a breach caused by an event beyond its reasonable control, including a natural disaster, disease outbreak, war, riot, terrorist action, civil commotion, malicious damage, government action, industrial action or dispute, fire, flood, storm, or failure of third party telecommunications services.

10.4.   **Publicity:** Neither party will publicly disclose the relationship between the parties or the Services provided under this Agreement without the other party's prior written consent.

10.5.   **Invalidity:** If any term of this Agreement is found invalid, illegal or unenforceable, the rest of the Agreement remains in effect.

10.6.   **No waiver:** Either party's delay or failure to enforce a term of the Agreement is not a waiver of that right and does not prevent that party from later enforcing that term or any other term.

10.7.   **Notice:** Each party will deliver notices for legal service or material breach by a courier service or recorded delivery: for Brandwatch, to its registered office address as set out above; for Customer, to its address as set out in an Order. Any notices for any matter other than legal service or material breach may be delivered in accordance with the previous sentence or by email. If sent by email, Customer will send the notice to legalnotices@brandwatch.com with Customer's account manager in cc, and Brandwatch will send the notice to Customer to via an email address listed in any Order. Notice sent by recorded delivery is received three business days after posting; email notice is deemed received 24 hours after it is sent.

10.8.   **Assignment:** Neither party may assign, transfer, charge or otherwise encumber, create any trust over, or deal in any manner with this Agreement, or any right, benefit, or interest under it, nor transfer or novate (each an "**Assignment**") without the other party's prior written consent. Any Assignment without Brandwatch's prior written consent is void. Notwithstanding the previous sentence, either party may make an Assignment without the other party's prior written consent (but with notice to the other party) to a successor pursuant to a merger, acquisition, change in control, or similar transaction.

10.9.   **Anti-bribery:** The parties will: (a) comply with all Applicable Law relating to anti-bribery or anti-corruption; (b) not engage in any act which, if it had occurred in the United Kingdom, the United States, the European Union, Singapore, or Australia would have violated Applicable Law relating to anti-bribery or anti-corruption; and (c) promptly report to the other party if it receives a request for undue advantage.

10.10.  **Entire agreement:** This Agreement is the exclusive statement of agreement and understanding between the parties. This Agreement excludes all prior or contemporaneous proposals, understandings, agreements, or

representations about its subject matter. Each party agrees that in entering into this Agreement, neither party relies on, and will have no remedy in respect of, any proposal, understanding, agreement, or representation other than as set out in this Agreement.

10.11. **Order of priority:** If there is a conflict of this Agreement: sections 8 and 10.10 of these terms and conditions prevail over an Order, an Order prevails over other sections of these terms and conditions, which in turn prevail over the Service Level Agreement. The English version of these terms and conditions prevails over any non-English version.

10.12. **Third party rights:** Other than as set out in sections 9.1 and 9.2, this Agreement does not create or confer any rights in favour of any person, other than the parties to this Agreement, even if that person has relied on the term or has indicated to any party its assent to the term.

10.13. **Governing law and jurisdiction:** Each party agrees to the applicable governing law and jurisdiction based on Customer's domicile, as set out in the table below.

| If Customer is domiciled in: | The governing law is: | The courts that have exclusive jurisdiction are in: |
| --- | --- | --- |
| Any country or geographic region that is not listed below | English | England |
| Germany | German | Berlin |
| France | French | Paris Court of Appeal, including the international Chamber of the Paris Commercial Court |
| U.S.A., Mexico, or Canada | New York | New York City |
| Countries in Asia or Asia Pacific | Singapore | Singapore |
| Australia or New Zealand | New South Wales | Sydney |