J. JONATHAN HAWK (SBN 254350)
jhawk@mwe.com
**McDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:  1 (310) 277-4110
Facsimile:  1 (310) 277-4730

RICHARD D. SALGADO (*Pro Hac Vice*
Application Forthcoming)
rsalgado@mwe.com
JORDAN KAZLOW (*Pro Hac Vice* Application
Forthcoming)
jkazlow@mwe.com
LUCAS J. HALE (*Pro Hac Vice* Application
Forthcoming)
lhale@mwe.com
**McDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone:  1 (214) 295-8000
Facsimile:  1 (972) 232-3098

Attorneys for Plaintiff X CORP.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| X CORP., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTER FOR COUNTERING DIGITAL HATE, INC., a Washington D.C. non-profit corporation; CENTER FOR COUNTERING DIGITAL HATE LTD., a British non-profit organization; STICHTING EUROPEAN CLIMATE FOUNDATION; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.   3:23-CV-03836-CRB<br><br>**X CORP.'S OPPOSITION TO DEFENDANT EUROPEAN CLIMATE FOUNDATION'S  MOTION TO DISMISS UNDER RULES 12(B)(2) AND 12(B)(6)**<br><br><br>Date: February 23, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6 – 17th Floor<br>Judge: Hon. Charles R. Breyer |

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..............................................................................................................1

II.    STATEMENT OF ISSUES ...............................................................................................2

III.   FACTUAL BACKGROUND ............................................................................................2

IV.    SUMMARY OF ARGUMENT .........................................................................................3

V.     ARGUMENT .....................................................................................................................5

     A.     ECF Waived Its Challenge to Jurisdiction Under Rule 12(b)(2) .............................5

     B.     The Court Has Specific Jurisdiction Over ECF Under Rule 4(k)(2) .........................6

          1.     Relevant Legal Standard                                                           6

          2.     X Corp. Has Established ECF's Minimum Contacts with the U.S.              7

               a.     ECF Purposefully Directed Its Activities At The U.S. ......................7

                    i.     ECF Acted Intentionally .............................................7

                    ii.    ECF Expressly Aimed Its Conduct at The U.S.......................8

                    iii.   ECF Caused Harm It Knew Would Be Felt In The U.S. .......10

               b.     X Corp.'s Claims Arise Out of ECF's Conduct In the U.S. .............10

               c.     ECF Has Not and Cannot Establish That the Exercise of Jurisdiction Would Be Unreasonable ...............................................................11

          3.     California's Long Arm Statute Provides For Specific Jurisdiction            13

          4.     Further In the Alternative, Jurisdictional Discovery Is Warranted or At Least An Opportunity to Amend the Complaint                          14

     C.     The Amended Complaint Sufficiently Pleads Its Claims Against ECF ...................14

VI.    CONCLUSION.................................................................................................................15

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airwair Int'l Ltd. v. Schultz,*
    73 F. Supp. 3d 1225 (N.D. Cal. 2014) ...................................................................3, 7

*Alejandro Fernandez Tinto Pesquera, S.l v. Fernandez Perez,*
    2021 WL 254193 (N.D. Cal. Jan. 26, 2021) ...........................................................4, 8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017) ....................................................................................8

*Ayla, LLC v. Alya Skin Pty. Ltd,*
    11 F.4th 972 (9th Cir. 2021) ......................................................................................6

*Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.,*
    2006 WL 658602 (E.D. Cal. Mar. 15, 2006) ...........................................................13

*Brayton Purcell LLP v. Recordon & Recordon,*
    606 F.3d 1124 (9th Cir. 2010) ....................................................................3, 7, 9, 10

*Caruth v. Int'l Psychoanalytical Ass'n,*
    59 F.3d 126 (9th Cir. 1995) ......................................................................................12

*Chan v. Society Expeditions, Inc.,*
    39 F.3d 1398 (9th Cir. 1994) ..................................................................................3, 5

*Craigslist, Inc. v. Naturemarket, Inc.,*
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) .....................................................................5

*Dish Network, LLC v. Jadoo TV, Inc.,*
    2020 WL 6536659 (C.D. Cal. Mar. 16, 2020) ...........................................................9

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) ..................................................................................10

*Facebook, Inc. v. Solonchenko,*
    2022 WL 18491616 (N.D. Cal. Dec. 29, 2022) ......................................................3, 5

*Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.,*
    828 F.2d 1439 (9th Cir. 1987) ..................................................................................12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021) ..............................................................................................11

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gates Learjet Corp. v. Jensen*,
    743 F.2d 1325 (9th Cir. 1984) ................................................................13

*Gordy v. Daily News, L.P.*,
    95 F.3d 829 (9th Cir. 1996*)* ..................................................................13

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ...................................................................6

*Hydentra Help Int. v. Sagan Ltd.*,
    783 F. App'x. 663 (9th Cir. 2019) .....................................................4, 10

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
    2014 WL 12700983 (C.D. Cal. Apr. 10, 2014) ........................................9

*Lang Van, Inc. v. VNG Corp.*,
    40 F.4th 1034 (9th Cir. 2022) ..............................................................6, 7

*Laub v. U.S. Dep't of the Interior*,
    342 F.3d 1080 (9th Cir. 2003) .............................................................4, 14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ..............................................................3, 6

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ..................................................................9

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) .............................................4, 11, 12, 13

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..............................................................6, 7

*Podium Corp. Inc. v. Chekkit Geolocation Servs., Inc.*,
    2021 WL 5772269 (D. Utah Dec. 6, 2021)............................................4, 14

*Reflex Media, Inc. v. Chan*,
    2020 WL 6694316 (C.D. Cal. Oct. 30, 2020)...........................................9

*Rosen v. Terapeak, Inc.*,
    2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) ........................................9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...............................................................7, 13

*Sinatra v. Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) .................................................................12

*Sorensen v. New Koosharem Corp.*,
    2015 WL 12426149 (C.D. Cal. Oct. 15, 2015)........................................15

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

OPPOSITION to ECF'S MOTION to DISMISS
CASE NO. 3:23-CV-03836-CRB

*Twitter, Inc. v. Skootle, Corp.*,
  2012 WL 2375486 (N.D. Cal. June 22, 2012) ...................................................3, 5

*United Tactical Syst. LLC v. Real Action Paintball, Inc.*,
  108 F. Supp. 3d 733 (N.D. Cal. 2015) ...................................................................10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................9

*Wash. Shoe. Co. v. A-Z Sporting Goods, Inc.*,
  704 F.3d 668 (9th Cir. 2012) ..................................................................................8

*Westbrook v. Paulson*,
  2021 WL 963486 (W.D. Wash. March 15, 2021) ...................................................9

*WhatsApp Inc. v. NSO Grp. Tech. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020) ...................................................4, 8, 12, 13

*Will Co., Ltd. v. Lee*,
  47 F.4th 917 (9th Cir. 2022) .............................................................................6, 7, 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir.2006) (*en banc*) ...............................................................10

*Yamashita v. LG Chem., Ltd.*,
  62 F.4th 496 505-506 (9th Cir. 2023) ...................................................................11

*Yelp Inc. v. Catron*,
  70 F. Supp. 3d 1082 (N.D. Cal. 2014) ....................................................................5

**Statutes**

Cal. Civ. Proc. Code § 410.10 ................................................................................13

18 U.S.C. § 1030...........................................................................................*passim*

**Rules**

Fed. R. Civ. P. 4(k)(2)..................................................................................*passim*

Fed. R. Civ. P. 11 ........................................................................................... 1, 9

Fed. R. Civ. P. 12 .........................................................................................*passim*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Opposition to ECF's Motion to Dismiss
Case No. 3:23-cv-03836-CRB

1

## I.     <u>INTRODUCTION</u>

2

The jurisdictional challenge in ECF's[1] Motion to Dismiss ("Motion") must fail based on the

3

Motion's own evidence, namely the "Orders" that ECF placed with Runtime Collective Ltd., T/A

4

Brandwatch ("Brandwatch") between 2021 and 2023.  Those Orders—previously unavailable to X

5

Corp.—show that ECF repeatedly agreed to X Corp.'s terms of service ("ToS").  Those ToS then

6

provide that all disputes between ECF and X Corp. relating to the X platform ("X") must be heard

7

exclusively in courts in San Francisco, and that ECF "consent[ed] to personal jurisdiction …."  ECF's

8

agreement to the ToS is fatal to its jurisdictional challenge, as this dispute centers on ECF improperly

9

granting access to data from X.

10

Even putting that aside, the Motion's jurisdictional challenge under Federal Rule of Civil

11

Procedure ("Rule") 12(b)(2) and its challenge to the sufficiency of X Corp.'s claims under Rule

12

12(b)(6) fail based on the uncontroverted allegations, which the Court must accept as true for

13

purposes here.  The Amended Complaint's uncontroverted allegations are that ECF contracted with

14

Brandwatch for access to non-public X Corp. data (the "Licensed Materials") maintained on X

15

Corp.'s protected servers in California, which ECF could access through login credentials provided

16

by Brandwatch.  ECF's contracts with Brandwatch prohibited ECF from sharing its login credentials

17

with third parties, and Brandwatch's contracts with X Corp. prohibited Brandwatch from providing

18

unauthorized access to the Licensed Materials.  Knowing this, ECF intentionally reached into the

19

U.S. to share its login credentials with CCDH US,[2] to enable CCDH to gain unauthorized access to

20

the Licensed Materials on protected U.S. servers, mischaracterize that data, and use it to give the

21

appearance of legitimacy to CCDH's efforts to call for advertising bans on X.

22

The Motion attempts to distract from this by making grandiose statements about purported

23

factual inaccuracies in the Amended Complaint, and in a footnote alludes to "significant concerns

24

under Rule 11," but it cites only a declaration that includes none of the key assertions that the Motion

25

claims it does.  ECF's arguments for dismissal are unfounded and should be rejected.

26

27

[1] ECF means defendant Stichting European Climate Foundation.

28

[2] CCDH collectively refers to the Center for Countering Digital Hate, Inc. ("CCDH US") and the Center for Countering Digital Hate Ltd. ("CCDH UK").  ECF and CCDH together are referred to as "Defendants."

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**II.**    **STATEMENT OF ISSUES**

     1.    Whether the Court can exercise personal jurisdiction over ECF?

     2.    Whether the Amended Complaint sufficiently pleads its claims against ECF?

**III.**    **FACTUAL BACKGROUND**

     The Amended Complaint alleges that ECF subscribed to the Brandwatch applications, was provided with login credentials to access those applications, and was contractually prohibited from sharing its credentials with third parties.  *Id.* at ¶¶ 35, 37.  ECF knew the Brandwatch applications could be used to access the Licensed Materials maintained on X Corp.'s protected servers in California, and that Brandwatch was prohibited under an agreement with X Corp. from providing third parties with access to that data.  *Id.*, ¶¶ 37-38.  ECF nonetheless impermissibly shared its credentials with CCDH US, a U.S. entity.  *Id.*, ¶ 38.  ECF knew CCDH was not a Brandwatch subscriber, but intended to enable its unauthorized access to the Licensed Materials and for CCDH to publish a report that quoted those materials out of context to pressure companies to stop advertising on X.  *Id.*, ¶¶ 38, 92.  ECF further knew CCDH intended its course of conduct to harm X Corp. (a U.S. entity), and ECF intentionally acted to knowingly support those efforts and that harm.  *Id.*, ¶ 92.

     The Amended Complaint asserts three claims against ECF for: (1) violation of the Computer Fraud and Abuse Act ("CFAA"); (2) intentional interference with contractual relations; and (3) inducing breach of contract.  *Id.*, ¶¶ 80-99.

     The Motion argues that this Court lacks personal jurisdiction over ECF under Rule 12(b)(2) and that the Amended Complaint is insufficiently pleaded under Rule 12(b)(6).  Mot at 14.  ECF's Motion is accompanied by a single declaration from Morgan Després, that attaches ECF's purported Orders with Brandwatch between 2021 and 2023.  ECF 49-1 (the "Després Decl.").  That evidence, however, establishes that ECF consented to personal jurisdiction here.

     ECF's Orders for 2021 through 2023 state, "[t]his Agreement consists of this Order, [and] the Listening Service Appendix ('SA') [] at https://brandwatch.com/legal/listening-service-appendix/, … which [is] expressly incorporated into this Order."  ECF 49-2, -3, and -4 (all at p. 3).  The relevant SA provides ECF "will comply with the Twitter Terms of Service, usually at https://twitter.com/tos."  Request for Judicial Notice ("RJN"), Ex. 1.  The relevant ToS, in turn,

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

provide that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction …." *Id.*, Ex. 2

In addition to this factual revelation, the Després Declaration notably fails to dispute any of the Amended Complaint's key jurisdictional allegations. Am. Compl., ¶¶ 36-38, 85-87.

At most, it claims that Brandwatch "facilitate[d]" access for CCDH UK. Després Decl., ¶¶ 13-14, Ex. D. But the email it relies on shows only that personnel from CCDH UK and a Brandwatch customer service rep discussed account access, not that Brandwatch authorized CCDH to access X Corp. data, let alone using ECF's login credentials. *Id.* And if anything, this hand-picked email *supports* X Corp.'s allegation that CCDH conspired with ECF.

## IV.   <u>SUMMARY OF ARGUMENT</u>

ECF's challenge to the Court exercising personal jurisdiction fails for two independent reasons. First, ECF waived its challenge by agreeing to the ToS in each of 2021, 2022, and 2023. *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1406-1407 (9th Cir. 1994). The ToS's provisions grant exclusive jurisdiction over disputes between ECF and X Corp. relating to X to the federal court in this District or state courts in San Francisco County. Those provisions also provide that ECF consented to personal jurisdiction in those fora. Those provisions are valid and enforceable, and constitute consent to the exercise of personal jurisdiction by this District Court. *Twitter, Inc. v. Skootle, Corp.,* 2012 WL 2375486, at *6 (N.D. Cal. June 22, 2012); *see also Facebook, Inc. v. Solonchenko*, 2022 WL 18491616, at *2-4, 6 (N.D. Cal. Dec. 29, 2022).

ECF's dispute with X Corp. falls within the scope of the ToS's jurisdiction provisions. X Corp.'s claims stem from ECF unlawfully enabling CCDH's access to X's non-public data. ECF consented to personal jurisdiction, and waived its challenge.

Separately, the Amended Complaint's uncontroverted allegations, which must be taken as true for purposes here, establish personal jurisdiction over ECF under Rule 4(k)(2). *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); *Airwair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1232 (N.D. Cal. 2014). Those uncontroverted allegations show that ECF reached into the U.S. by

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

intentionally providing CCDH US with its password to the Brandwatch applications.  ECF did that to enable CCDH US to gain unauthorized access to the non-public Licensed Materials on protected servers in the U.S., all while seeking to support CCDH's efforts to use that access to inflict financial harm on X Corp., a U.S. company, by calling for companies to stop advertising on X.  This establishes personal jurisdiction over ECF.  *Hydentra Help Int. v. Sagan Ltd.*, 783 F. App'x. 663, 665-66 (9th Cir. 2019); *Alejandro Fernandez Tinto Pesquera, S.l v. Fernandez Perez*, 2021 WL 254193, at *3, 4, 9-10 (N.D. Cal. Jan. 26, 2021); *WhatsApp Inc. v. NSO Grp. Tech. Ltd.*, 472 F. Supp. 3d 649, 672-73 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021).

ECF's evidence disputes none of those key jurisdictional allegations, and the Motion largely attempts to mischaracterize them and isolate individual allegations to present them out of context.  But the Amended Complaint's allegations are sufficient, and ECF cannot carry its burden to show that the exercise of personal jurisdiction here would be unreasonable.  This is particularly true where ECF purposely interjected itself into the U.S. via its conduct and cannot show that it would bear any greater burden to litigate in the U.S. than X Corp. would bear if it needed to litigate abroad.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998); *WhatsApp Inc.*, 472 F. Supp. 3d at 672-73.

The Amended Complaint establishes personal jurisdiction but, if the Court were inclined to grant ECF's Motion under Rule 12(b)(2), jurisdictional discovery or leave to amend would be appropriate.  *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  ECF's own evidence fails to deny any of the key jurisdictional allegations, and those glaring omissions indicate that ECF cannot deny them.  Discovery would thus allow X Corp. to develop that jurisdictional evidence that is now only available to Defendants, including that ECF shared its login credentials with CCDH US, knowing how CCDH intended to use them.

ECF's Motion also fails under Rule 12(b)(6), as the Amended Complaint has sufficiently pleaded all of its claims against ECF.  The Motion notably focuses on challenging X Corp.'s CFAA claim, but that is adequately pleaded based on X Corp.'s allegations of ECF impermissibly sharing its Brandwatch login credentials with CCDH.  There is no merit to ECF's arguments that the Amended Complaint asserts an invalid aiding and abetting theory under the CFAA (*Podium Corp.*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Inc. v. Chekkit Geolocation Servs., Inc.*, 2021 WL 5772269, at *8 (D. Utah Dec. 6, 2021)), or that the harm suffered by X Corp. was too attenuated from ECF's conduct.  There is likewise no merit to the Rule 12(b)(6) arguments asserted by CCDH that ECF's motion incorporates by reference.  X Corp. has refuted each of those arguments in its opposition to CCDH's motion, and they are equally applicable to ECF, as incorporated herein.

## V.   ARGUMENT

### A.   ECF Waived Its Challenge to Jurisdiction Under Rule 12(b)(2)

A forum selection clause alone can confer personal jurisdiction.  *Chan*, 39 F.3d at 1406-07; *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1092 (N.D. Cal. 2014).  Indeed, "[c]hallenges to personal jurisdiction may be waived by either express or implied consent," and "[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process."  *Chan,* 39 F.3d at 1406-07.

Here, ECF agreed to the ToS, and this dispute falls squarely within the scope of its jurisdiction provisions, which apply to "[a]ll disputes related to these Terms or the Services," defined to include X's "services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.[x].com/rules-and-policies/[x]-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services'), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services."  RJN, Ex. 2.  X Corp.'s claims against ECF stem from ECF enabling CCDH's unauthorized access to X's non-public data through Brandwatch, including content appearing on X (Am. Compl., ¶ 29).  This is a "dispute" "relating to the [X] Services."

ECF's consent to the ToS, and thus to personal jurisdiction, should be enforced.  This is particularly true where multiple courts have found X Corp.'s ToS to be valid and enforceable, including in the context of exercising personal jurisdiction over a defendant based on consent to the ToS.  *See, e.g., Twitter, Inc.*, 2012 WL 2375486, at *6; *see also Facebook, Inc.*, 2022 WL 18491616, at *6 (consent to personal jurisdiction based on similar provisions in Facebook's terms); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052-53 (N.D. Cal. 2010) (same).

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

ECF's consent to the ToS waived its argument under Rule 12(b)(2).

**B.**     **The Court Has Specific Jurisdiction Over ECF Under Rule 4(k)(2)**

     **1.**     **Relevant Legal Standard**

ECF's agreement to the ToS aside, the Court can exercise personal jurisdiction over ECF regardless. To demonstrate specific personal jurisdiction under Rule 4(k)(2), a plaintiff must demonstrate: (i) the claim against defendant arises under federal law; (ii) defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and, (iii) exercising jurisdiction comports with due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).[3]

Here, the first two factors are not disputed. The Amended Complaint alleges, among other things, that ECF violated a federal statute, i.e., CFAA §§ 1030(b) and (g), by illegally sharing its login credentials with CCDH US to enable unauthorized access to a secured database. *See Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022); Am. Compl., ¶¶ 38, 81, 85. ECF acknowledges it is being sued under federal law, and concedes it is not subject to general jurisdiction in any U.S. court. Mot. at 12; *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461-62 (9th Cir. 2007) (defendant did not allege general jurisdiction of any other U.S. court).

Only the third factor is thus at-issue, and "the determinative question [becomes] whether the exercise of jurisdiction over [the defendant] comports with due process." *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022). This factor is satisfied where the defendant has "'minimum contacts' with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. With a foreign defendant, the minimum contacts analysis is nearly identical to the analysis for a domestic defendant, except the court will consider the defendant's contacts with the U.S. as a whole. *Wartsila*, 485 F.3d at 462.

If a motion under Rule 12(b)(2) is based solely on written materials, "plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc.*,

---

[3] The Motion misquotes the standard for personal jurisdiction under Rule 4(k)(2) as requiring "extensive contacts to this country." *Holland Am. Line Inc.*, 485 F.3d. at 462. Courts "have rarely exercised jurisdiction under 4(k)(2), but this rarity simply reflects that situations where a defendant has the requisite contacts with the U.S. but not with any one state are unusual. The rarity of the rule's applicability does not indicate that Rule 4(k)(2) imposes a higher standard for due process." *Ayla, LLC v. Alya Skin Pty. Ltd*, 11 F.4th 972, 978 n. 1 (9th Cir. 2021).

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

647 F.3d at 1223. If the defendant fails to submit evidence to controvert the complaint's jurisdictional allegations, the allegations "must be taken as true" and, unto themselves, can establish sufficient minimum contacts. *Brayton Purcell LLP*, 606 F.3d at 1127; *Airwair Int'l Ltd.*, 73 F. Supp. 3d at 1232. Factual disputes must be resolved in the plaintiff's favor. *Pebble Beach Co.*, 453 F.3d at 1154.

### 2. X Corp. Has Established ECF's Minimum Contacts with the U.S.

A minimum contacts analysis under Rule 4(k)(2) considers three prongs, whether: (1) the defendant purposefully direct[s] its activities at the forum, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Lee*, 47 F.4th at 922. The plaintiff has the burden on the first two prongs, while the defendant must prove the court's exercise of jurisdiction would be unreasonable. *Lang Van*, 40 F.4th at 1040.

The minimum contacts test is satisfied via the Amended Complaint's allegations.

### a. ECF Purposefully Directed Its Activities At The U.S.

A defendant purposely directs its activities at the U.S. when: (i) it commits an intentional act; (ii) expressly aimed at the forum state; and (iii) causes harm the defendant knows is likely to be suffered in the forum state. *Lee*, 47 F.4th at 922; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004). X Corp. has established all elements.

### i. ECF Acted Intentionally

A defendant acts intentionally when it intends to perform an act, regardless of what consequences it intends to flow therefrom. *Schwarzenegger*, 374 F.3d at 806. "The threshold of what constitutes an intentional act is relatively low," and even passive acts can be intentional. *Lee*, 47 F.4th at 922; *Airwair Int'l Ltd.*, 73 F.Supp.3d at 1233; *see, e.g.*, *Schwarzenegger*, 374 F.3d at 806.

ECF's alleged conduct clears this low bar. The Amended Complaint alleges that: ECF "knew CCDH did not have authorization" to access the Brandwatch applications; "knew that CCDH wanted to gain access to them;" "knew that both the Brandwatch Agreements and ECF's own agreement with Brandwatch prohibited ECF from sharing its login credentials with CCDH;" and "knowingly and intentionally chose to unlawfully share its login credentials with [CCDH US]." Am. Compl., ¶¶ 2, 11, 38, 85, 86. It also alleges ECF knew how CCDH intended to unlawfully use the login

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

credentials and intended to further those efforts. *Id.*, ¶¶ 85-86.

### ii.      ECF Expressly Aimed Its Conduct at The U.S.

A lawsuit arises out of or relates to the defendant's U.S.-related activities if the wrongful conduct intentionally targets the forum. *Wash. Shoe. Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675 (9th Cir. 2012); *Lee*, 47 F.4th 917. This "express aiming" inquiry assesses "the defendant's 'own contacts' with the forum, not [] the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017)).

Courts have found this requirement satisfied where conduct forming the basis for the parties' dispute was clearly directed at the forum. *See*, *e.g.*, *Fernandez Perez*, 2021 WL 254193, at *3, 4, 9-10 (same conduct that established express aiming was at the core of plaintiff's claim for wrongful interference, i.e., sending cease and desist letters to plaintiff in California and telling Ohio Division of Liquor Control that plaintiff was not authorized to sell wine under disputed mark);[4] *WhatsApp Inc.*, 472 F. Supp. 3d at 672-73 (finding express aiming in a Rule 4(k)(2) analysis for CFAA claim; uncontroverted allegations were that "defendants sought out WhatsApp's California-based servers for the purpose of routing malicious code through [them]").[5]

The Amended Complaint alleges that ECF actively and intentionally reached into this forum by: impermissibly providing CCDH US with login credentials; to enable CCDH's unlawful access to non-public data on protected U.S. servers; with the intent to support CCDH's course of conduct in seeking to harm X Corp., a U.S. entity. Am. Compl., ¶¶ 2, 11, 36, 38, 85-86. These allegations are at the core of X Corp.'s claims against ECF, and show ECF's connection to the U.S. was not passive or fortuitous. Mot. at 6. Nor was ECF's conduct undertaken solely outside of this forum. Mot. at 7-8 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The Motion's arguments are wrong.

*First*, the Motion's mischaracterizations of the Amended Complaint are hollow efforts to contort key jurisdictional allegations that ECF cannot fairly dispute. The Motion argues, for example,

---

[4] The court granted the defendant's motion because it would be unreasonable for the parties to litigate outside of Spain under circumstances different from those here, including the history of litigation between the parties. *Id.* at *13, *16..
[5] The *WhatsApp* court's analysis distinguishes between claims for accessing a third party's servers that were "not the ultimate target of the intentional act," versus the plaintiff's servers, which were. *WhatsApp*, 472 F. Supp. 3d at 671. Here, the Amended Complaint's uncontroverted allegations show both the servers used by Brandwatch and X Corp.'s servers were the targets of the wrongful conduct—something that ECF knew. Am. Compl., ¶¶ 36-38.

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

that "the gravamen of X's claims against ECF is that ECF facilitated CCDH's publication of critical reports" and that, even if ECF had provided CCDH US with its login credentials, it was an "insubstantial act [that] cannot confer jurisdiction over a foreign party for any and all later acts taken." Mot. at 6-7. The Motion attempts to isolate a portion of the Defendants' conduct, and present it out of context to distract from ECF's inability to provide any evidence disputing the allegations that ECF violated federal law by conspiring with CCDH and knowingly enabling CCDH's access to nonpublic data on protected servers. Am. Compl., ¶¶ 85-88.

The Motion goes as far as to repeatedly mischaracterize its own evidence. It cites the Després Declaration, claiming X Corp. "fals[ely]" alleged ECF provided its login credentials to CCDH, and even mentions unspecified, "significant concerns under Rule 11." Mot. at 6-7 n. 5. But the Després Declaration tellingly does not state that ECF never provided its login credentials to CCDH US. That omission is telling, and the Motion's flippant invocation of Rule 11 is baseless and improper.

*Second*, the authorities cited in the Motion at pages 6 to 9 are distinguishable. They largely address circumstances where the defendants had no meaningful contacts with the forum, let alone in relation to the underlying claims. *Walden*, 571 U.S. at 289 (never "traveled to or sent anything or anyone" to forum); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017) (travel to forum only to comply with procedural requirements to prosecute foreign litigation ).[6]

*Third*, the Motion argues the Amended Complaint's jurisdictional allegations rest entirely on ECF's foreign conduct that merely targets X Corp., which just happens to have strong ties to this forum. Mot. at 1, 6-9 (citing *Walden*, 571 U.S. at 284). It goes on to imply individual targeting is no longer sufficient to establish personal jurisdiction. The Motion is incorrect on both counts.

Individualized targeting is a viable basis for establishing personal jurisdiction, and cases confirm this, including post-*Walden*. *See, e.g.*, *Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at *5 (C.D. Cal. Oct. 30, 2020); *Brayton Purcell*, 606 F.3d at 1129; *InfoSpan, Inc. v. Emirates NBD Bank*

---

[6] Other cases cited in the Motion reject arguments not being asserted here, including that "all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every [forum] in which it is accessed" (*Wanat*, 970 F.3d at 1212; *Westbrook v. Paulson*, 2021 WL 963486, at *5 (W.D. Wash. March 15, 2021)), and that the mere location of servers can establish personal jurisdiction. *Dish Network, LLC v. Jadoo TV, Inc.*, 2020 WL 6536659, at *7 (C.D. Cal. Mar. 16, 2020); *Rosen v. Terapeak, Inc.*, 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015).

*PJSC*, 2014 WL 12700983, at *5 (C.D. Cal. Apr. 10, 2014).  Regardless, uncontroverted allegations in the Amended Complaint go well beyond ECF's targeting of X Corp., to establish that ECF reached into this forum by providing CCDH US with its login credentials, as part of ECF knowingly enabling CCDH's unauthorized access to the non-public Licensed Materials on protected servers in the U.S., and ECF enabling CCDH US's larger plan to harm X Corp. via calls to stop advertising on the platform, all of which are at the core of X Corp.'s claims against ECF.  Am. Compl., ¶¶ 38, 85-88.

The uncontroverted allegations establish express aiming.

### iii.    ECF Caused Harm It Knew Would Be Felt in The U.S.

The third factor requires the plaintiff to show that the defendant caused harm that the defendant knows is likely to be suffered in the forum state.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (*en banc*).  The foreseeability, not the magnitude, of the harm is important (*Id.*), and this element is satisfied when the defendant's intentional act has "foreseeable effects" in the forum (*Brayton Purcell LLP*, 606 F.3d at 1131).  Only a small percentage of the overall harm need occur in the forum.  *Yahoo! Inc.*, 433 F.3d at 1207.  Some or all of the unlawful acts that caused the harm could even occur in another jurisdiction.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002).

Here, ECF is alleged to have knowingly reached into the U.S. via intentional acts, to provide support to CCDH US's efforts to inflict at least tens of millions of dollars in harm on X Corp., a U.S. company incorporated in Nevada and headquartered in San Francisco.  Am. Compl., ¶¶ 7, 36-38, 70.  The Motion has produced no evidence controverting this.

The allegations are sufficient to establish that the economic loss suffered by X Corp. was foreseeable as a result of ECF's conduct.  *See Hydentra Help Int.*, 783 F. App'x. at 665-66 (that defendant knowingly caused a U.S. company to incur economic loss supported finding of personal jurisdiction under Rule 4(k)(2)); *United Tactical Syst. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 749 (N.D. Cal. 2015) (same).

### b.    X Corp.'s Claims Arise Out of ECF's Conduct In the U.S.

A claim "arises out of or relates to the defendant's contacts with the forum" if the plaintiff shows that but-for the defendant's forum-related conduct, the injury would not have occurred, or a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

"sufficient 'affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (the phrase "arising out of or relate to" does "contemplate[] that some relationships will support jurisdiction without  a causal showing").

This element is easily satisfied.  But-for ECF sharing its login credentials with CCDH US, CCDH would have been unable to access X Corp.'s protected data, and harm X Corp. as Defendants did.  Am. Compl., ¶¶ 38, 85-86.  Moreover, this litigation "relates to" ECF's contacts with the U.S., as it relates to ECF's sharing of its password credentials with a U.S. entity, CCDH US, and ECF knew that its contacts would harm X Corp. in the forum.  *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496 505-506 (9th Cir. 2023) (recognizing "related to" prong could be satisfied where "defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff").

The Motion argues otherwise, claiming: ECF's "core actions" "occurred in Europe and the UK"; the only connection to this forum is X Corp. being a U.S. entity; and CCDH's conduct cannot be imputed to ECF.  Mot. at 9-10.  Again, those arguments are unsupported and ignore the uncontroverted allegations that now must be taken as true, i.e., that ECF provided its login credentials to CCDH US, and that CCDH US admittedly drafted the "report" and expressly stated it relied on data accessed via the Brandwatch applications (i.e., through ECF's account).  Am. Compl., ¶¶ 84-86. The Amended Complaint focuses on ECF's own conduct in knowingly and intentionally providing its login credentials to CCDH US (a U.S. entity), with the intent to support CCDH's harmful conduct. This prong is established in X Corp.'s favor.

### c.   ECF Has Not and Cannot Establish That the Exercise of Jurisdiction Would Be Unreasonable

There is a presumption of reasonableness when a plaintiff establishes the first two prongs of the minimum contacts analysis, as X Corp. has done here.  To defeat jurisdiction, ECF must present a "compelling case" that jurisdiction is unreasonable based on seven factors, discussed below. *Panavision Int'l, L.P.*, 141 F.3d at 1323 (9th Cir. 1998).  No factor is dispositive; courts must balance all seven.  *Id.*  The Motion fails to carry its burden.

***ECF purposely interjected itself into the U.S.*** This factor is analogous to, and established

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

where, purposeful direction is shown.  *WhatsApp Inc.*, 472 F. Supp. 3d at 676.  The Motion argues ECF has insufficient minimum contacts with the U.S., but the uncontroverted allegations show ECF reached into the U.S., with knowledge and intent to work with CCDH to inflict financial harm on X Corp.  *Panavision*, 141 F.3d at 1323 ("substantial" interjection where defendant aims acts at forum knowing plaintiff likely to be injured there).  This establishes purposeful direction (as above) and that ECF injected itself into the U.S.

The Motion's case law is inapposite, addressing, e.g., circumstances where contacts with the forum were entirely unrelated to, or at best attenuated from, the underlying dispute.  *See, e.g.*, *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1443-44 (9th Cir. 1987) (temporary presence of defendant's personnel in California no indication of calculated effort by defendant to conduct business here).  This factor favors exercising personal jurisdiction.

***No showing of burden.***  Courts consider whether the inconvenience to a defendant is so great as to deprive it of due process (*Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)), and assess the "burden on the defendant in light of the corresponding burden on the plaintiff."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

The Motion argues it would be difficult for ECF to litigate in the U.S.  Mot. at 11.  But ECF is self-described as a "major philanthropic initiative," with 213 employees, offices in The Hague, Berlin, Brussels, Budapest, London, Madrid, Paris and Warsaw, and that "supports over 700 partner organizations" "far beyond [its] borders."  RJN, Ex. 3.  It is now represented by a sophisticated law firm, based in California, with over 450 lawyers.  RJN, Ex. 4.  Even if ECF faced some burden in litigating in the U.S., the burden on X Corp. to litigate abroad would be similar, as X Corp.'s witnesses and evidence would largely be located in California.  *WhatsApp Inc.*, 472 F. Supp. 3d at 676.  The Motion fails to consider that, advances in technology "have significantly reduced the burden of litigating in another country,"[7] and that ECF has mitigated any potential burden by hiring U.S.-based counsel.  *Id.*  This favors X Corp.  *Id.*

***No conflict with a sovereign interest.***  The Motion argues only that the Court should exercise

---

[7]   https://www.cand.uscourts.gov/update-on-court-proceedings-operations-and-safety-protocols-july-28-2021/   ("The Northern District of California currently conducts both in-person and remote proceedings in all of its divisional offices").

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

"great care" in weighing this point.  Mot. at 11.  It fails, however, to identify any conflict that could serve as a basis for the Court to decline exercising jurisdiction.  *See, e.g.*, *Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.*, 2006 WL 658602, at *6 (E.D. Cal. Mar. 15, 2006), and this favors X Corp.

>     ***The U.S. and California have a pertinent interest.***  California and the U.S. have a strong interest in protecting their residents who are tortiously injured by foreign defendants.  *Panavision*, 141 F.3d at 1323; *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996*)*.  The U.S. has a strong interest in vindicating federal law claims, such as X Corp.'s CFAA claim.  *Cf. Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1336 (9th Cir. 1984).  This favors exercising jurisdiction over ECF.

>     ***This forum can most efficiently resolve the dispute / convenience and effective relief are given little weight***.  This factor focuses on the location of the evidence and witnesses.  It is neutral here for the same reasons discussed above.  *WhatsApp Inc.*, 472 F. Supp. 3d at 677 (factor is "no longer weighed heavily given the modern advances in communication and transportation").  It is also incorrect for the Motion to argue that an American court "would lack experience with the substantive law," where a key claim against ECF arises under U.S. federal law, namely the CFAA.

>     ***No alternative forum.***  Neither the Netherlands nor the UK are appropriate forums.  The dispute arises under U.S. federal law, ECF's unlawful conduct involved reaching into the U.S. and with the knowledge and intent to support CCDH in causing financial harm to X Corp.,  including by enabling access to data on protected U.S. servers so CCDH US could prepare its report.

### 3.    California's Long Arm Statute Provides For Specific Jurisdiction

California's long-arm statute allows California courts to exercise jurisdiction on any basis consistent with the California and U.S. Constitutions.  Cal. Civ. Proc. Code § 410.10.  The due process analysis under California's long-arm statute is the same as under Rule 4(k)(2), except ECF's contacts with California, not the U.S. as a whole, are relevant.  *Schwarzenegger*, 374 F.3d at 800-01.

ECF has contacts with California generally, as established by the Amended Complaint's uncontroverted allegations.  ECF targets California individuals and organizations for annual donations of millions of dollars.  Am. Compl., ¶ 10.  ECF's contacts with California further include substantial contacts related to this case.  *Id.*  ECF knew X Corp. kept the non-public data at-issue on its protected servers in California and, aware of that, enabled CCDH US to obtain unauthorized

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    access and cause injuries ECF knew that CCDH intended.  *Id.* at ¶¶ 36-38.

2        Under the same due process analysis above, ECF purposely directed its conduct at California,

3    and jurisdiction over ECF in this State is proper.

4        **4.      Further In the Alternative, Jurisdictional Discovery Is Warranted or At**

5            **Least An Opportunity to Amend the Complaint**

6        If the Court finds that ECF is not subject to personal jurisdiction as currently pleaded, X Corp.

7    respectfully requests the opportunity to conduct jurisdictional discovery and/or amend its complaint.

8    "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of

9    jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Laub*,

10   342 F.3d at 1093.  And here, ECF's communications with CCDH and the extent of their relationship

11   cannot be ascertained without jurisdictional discovery.  There are nonetheless clear indications that

12   X Corp. would be able to develop further evidence showing substantial jurisdictional contacts.

13       The Després Declaration implies ECF shared its login credentials to the Brandwatch

14   applications with CCDH.  The declaration fails to deny that ECF knew of and intended to support

15   CCDH's wrongful course of conduct, directed at harming X Corp.  The lack of denials is glaring,

16   and indicates ECF did not make such denials because it cannot.  Discovery would allow X Corp. to

17   develop jurisdictional evidence that is now available only to the Defendants.  X Corp. further expects

18   jurisdictional evidence can be obtained from Brandwatch, including evidence that Brandwatch spoke

19   with ECF about its impermissible sharing of its login credentials once discovered, and ECF

20   apologized for the conduct of a purported "rogue" actor within ECF.  ECF is presumably already

21   aware of these facts—as its evidentiary omissions suggest—and carefully worded its declaration to

22   (unsuccessfully) try to avoid them coming to light.

23       **C.      The Amended Complaint Sufficiently Pleads Its Claims Against ECF**

24       ECF first argues that the Amended Complaint's CFAA claims are based on an impermissible

25   "aiding and abetting" theory.  Mot. at 14.  That misstates the allegations and the law.

26       X Corp. has alleged that ECF itself violated § 1030(b) of the CFAA by conspiring with CCDH

27   and brought this civil action against ECF under § 1030(g).  Am. Compl., ¶ 85, 81.  The case ECF

28   cites to actually undercuts ECF.  *Podium Corp.*, 2021 WL 5772269, at *8 ("individuals who violate

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

the statute, or any individual who conspires to commit or attempts to commit an offense under [the statute]" are liable under CFAA).

ECF argues it was authorized under the Brandwatch terms to share its login information with CCDH.  Mot. at 14.  That stretches credulity and is not an appropriate basis for dismissal under Rule 12(b)(6) for the reasons set forth in X Corp.'s concurrently filed opposition to CCDH's Motion to Strike and Motion to Dismiss, which X opposition Corp. incorporates herein by reference.  The Motion also incorrectly argues ECF's conduct is too far removed from the alleged damages because of "intervening events."  Mot. at 15.[8]  X Corp. alleges ECF and CCDH intended to cause harm to X Corp. by driving advertisers away from the X platform, and X Corp. suffered that harm as a result. Am. Compl., ¶ 92.  Any relevant events were part of the alleged scheme Defendants set in motion to further their goal of financially damaging X Corp. and, in any event, is a matter for discovery.

Finally, the Motion incorporates by reference arguments for dismissal under Rule 12(b)(6) as set forth in CCDH's Motion to Dismiss.  Mot. at 14.  X Corp. has refuted those arguments, and expressly incorporates by reference its responses to those arguments, as if fully set forth herein.

## VI.    **CONCLUSION**

For these reasons, X Corp. respectfully requests that the Court deny ECF's Motion.

Dated: December 22, 2023                **McDERMOTT WILL & EMERY LLP**


By:     /s/ *J. Jonathan Hawk*
          J. Jonathan Hawk (SBN 254350)
          jhawk@mwe.com
          2049 Century Park East, Suite 3200
          Los Angeles, CA 90067-3206
          Telephone: (310) 277-4110
          Facsimile: (310) 277-4730

          Richard Salgado*
          richard.salgado@mwe.com
          Jordan Kazlow*
          jkazlow@mwe.com
          Lucas Hale*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[8] ECF cites *Sorensen v. New Koosharem Corp.*, 2015 WL 12426149 (C.D. Cal. Oct. 15, 2015), but the facts here are distinguishable.  That court held that the plaintiff, in arguing defendant prevented it from satisfying a debt, was alleging damages it would have suffered anyway without the alleged interference, rendering the damages too "attenuated."  *Id.* Here, by contrast, ECF's conduct was the but-for cause of X Corp.'s injuries.

1

lhale@mwe.com
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232 3098

*Pro Hac Vice application to be submitted*

**Attorneys for Plaintiff X Corp.**