MANATT, PHELPS & PHILLIPS, LLP
NATHANIEL L. BACH (Bar No. CA 246518)
*NBach@manatt.com*
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:    310.312.4000
Facsimile:    310.312.4224

THOMAS WORGER (Bar No. CA 311312)
*TWorger@manatt.com*
KYLA NUÑEZ (Bar No. CA 329484)
*KNunez@manatt.com*
One Embarcadero Center
30th Floor
San Francisco, California  94111
Telephone:    415.291.7400
Facsimile:    415.291.7474

Attorneys for Defendant
STICHTING EUROPEAN CLIMATE
FOUNDATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTER FOR COUNTERING DIGITAL HATE, INC., a Washington, D.C. non-profit corporation; CENTER FOR COUNTERING DIGITAL HATE LTD., a British non-profit organization; STICHTING EUROPEAN CLIMATE FOUNDATION; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 3:23-cv-03836-CRB<br><br>**DEFENDANT STICHTING EUROPEAN CLIMATE FOUNDATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hon. Charles R. Breyer<br><br>Hearing:      February 23, 2024<br>Time:         10:00 a.m.<br>Location:    Courtroom 6<br><br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION & SUMMARY OF ARGUMENT ........................................................ 1

II. ARGUMENT ..................................................................................................................... 1

    A.  The Court Lacks Personal Jurisdiction over ECF .................................................... 1

        1.  No Forum Selection Clause Exists to Force ECF to Litigate in this Court........................................................................................................... 1

        2.  X Fails to Carry Its Burden to Establish this Court's Jurisdiction over ECF .................................................................................................... 3

            a.  X's Unsupported Allegations Cannot Support Personal Jurisdiction in the Face of ECF's Evidence ..................................... 3

            b.  X Ignores Its Jurisdictionally Fatal Server-Related Allegations ........................................................................................ 5

            c.  X's Individualized Targeting Theory Has Been Abrogated and Rejected ........................................................................................ 6

            d.  Exercising Personal Jurisdiction over ECF Would Be Unreasonable and Violate Due Process ......................................... 8

            e.  ECF Lacks Minimum Contacts with California........................... 10

    B.  Jurisdictional Discovery and Amendment Would Be Futile and Inappropriate ...................................................................................................... 11

    C.  X Fails to State a Claim Against ECF.................................................................... 12

III. CONCLUSION ................................................................................................................ 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

## CASES

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987)...................................................................................................... 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017)...................................................................................... 6

*Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.*,
2006 WL 658602 (E.D. Cal. Mar. 15, 2006) ........................................................... 10

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010)...................................................................................... 6

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) ......................................................................................... 6

*Doe v. Geller*,
533 F. Supp. 2d 996 (N.D. Cal. 2008) ..................................................................... 10

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984)..................................................................................... 10

*Gofron v. Picsel Techs., Inc.*,
804 F. Supp. 2d 1030 (N.D. Cal. 2011) ..................................................................... 3

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992).................................................................................................... 12

*Hydentra HLP Int. Ltd. v. Sagan Ltd.*,
783 F. App'x 663 (9th Cir. 2019) ................................................................................ 8

*In re Orange, S.A.*,
818 F.3d 956 (9th Cir. 2016)........................................................................................ 3

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
2014 WL 12700983 (C.D. Cal. Apr. 10, 2014) ........................................................ 7

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
649 F.2d 1266 (9th Cir. 1981)...................................................................................... 8

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ........................................................................................ 3

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001)....................................................................................... 13

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998)................................................................................... 8, 9

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)............................................................................... 10, 11

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

**TABLE OF AUTHORITIES**
(continued)

Page

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ................................................................ 11

*Prevail Legal, Inc., v. Justin Gordon, et al.*,
2021 WL 1947578 (N.D. Cal. May 14, 2021) ........................................... 5

*Reflex Media, Inc. v. Chan*,
2020 WL 6694316 (C.D. Cal. Oct. 30, 2020) ........................................... 6

*Reynolds v. Binance Holdings Ltd.*,
481 F. Supp. 3d 997 (N.D. Cal. 2020) .................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ................................................................... 8

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ................................................................... 5

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
108 F. Supp. 3d 733 (N.D. Cal. 2015) ...................................................... 8

*Walden v. Fiore*,
571 U.S. 277 (2014) ..................................................................... passim

*WhatsApp Inc. v. NSO Grp.*
472 F. Supp. 3d 649, 671-72 (N.D. Cal. 2020) ...................................... 5, 8

*Will Co. v. Lee*,
47 F.4th 917 (9th Cir. 2022) ................................................................... 7

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ............................................................................... 8

**STATUTES**

18 U.S.C. § 1030 .................................................................................... 12

**OTHER AUTHORITIES**

Adam Satariano, "Illicit Content on Elon Musk's X Draws E.U. Investigation," N.Y.
Times (Dec. 18, 2023) ............................................................................. 9

https://blog.twitter.com/en_us/topics/company/2023/one-year-in ....................... 7

https://careers.twitter.com/en#positions ........................................................ 9

**RULES**

L.R. 11-1(a), 11-3(a)(1) ........................................................................... 9

Rule 4(k)(2) ............................................................................... passim

Rules 12(b)(2) and 12(b)(6) ...................................................................... 1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

I. **INTRODUCTION & SUMMARY OF ARGUMENT**

X's Opposition only cements the simple conclusion that ECF is not subject to personal jurisdiction in this Court (nor anywhere in the U.S.). ECF's motion should be granted.

**First**, contra X, ECF neither waived any jurisdictional challenge nor consented to jurisdiction in this Court. X has inexplicably misread its own terms of service, which contain *two different* sets of terms, with the specific terms for EU residents like ECF lacking any forum selection clause. The only forum clause remotely at issue is in ECF's agreements with Brandwatch UK, which provide for exclusive jurisdiction in English courts.

**Second**, X fails in its attempt to establish nationwide personal jurisdiction over ECF via Rule 4(k)(2), including because it cannot rely on its unsupported allegations in the face of ECF's contradictory evidence, which plainly shows that Brandwatch was fully aware of and facilitated access for Callum Hood, a UK resident and employee of CCDH *UK*. X then ignores its fatal server-related allegations in the Amended Complaint ("AC"), which further confirm that ECF is not subject to jurisdiction, and otherwise doubles-down on an abrogated "individualized targeting" theory that the Supreme Court rejected in *Walden v. Fiore*, 571 U.S. 277 (2014).

**Third**, X's failure to state a claim against ECF is only exacerbated by the admissions X makes in opposition to CCDH's motion, which confirm X's failure to plausibly plead breach, causation, or cognizable damages for its tort claims.

Nothing that X suspects it might find in a jurisdictional discovery fishing expedition would change the result here, and the Court should grant ECF's motion and dismiss the AC with prejudice as to ECF pursuant to Rules 12(b)(2) and 12(b)(6).

II. **ARGUMENT**

A. **The Court Lacks Personal Jurisdiction over ECF**

1. **No Forum Selection Clause Exists to Force ECF to Litigate in this Court**

X's argument that ECF agreed to be bound by its terms of service (Dkt. 64-2) ("TOS"), and therefore to have this case heard in this Court, is as wrong as it is confounding. X utterly misreads its own TOS, which ***do not contain any*** forum selection clause for parties based in the European Union, like ECF. And, in any event, X has no standing to enforce terms (including a venue clause)

that were incorporated into ECF's agreement with *Brandwatch UK*, to which X is a stranger.

First, X's (then Twitter) TOS contains no forum selection clause for EU residents like ECF. Rather, the TOS reflects two different sets of Terms: those for individuals who "live <u>outside</u> the European Union, EFTA States, or the United Kingdom" (the "Non-EU Terms") (Dkt. 64-2 at 2, emphasis added), and another set for those who "live <u>in</u> the European Union, EFTA States, or the United Kingdom" (the "EU Terms") (*id.* at 11, emphasis added).  Only the Non-EU Terms contain the forum selection clause upon which X relies.  The EU Terms contain **no forum selection clause at all**, and certainly none that provides for exclusive venue in the courts in San Francisco County.[1] This is all made plain by the very TOS that X attached as Exhibit 2 to its Request for Judicial Notice, which X apparently did not bother to read all the way through.  Dkt. 64-2.

Second, even if the Non-EU Terms could somehow apply to ECF—and they do not—X could not enforce them against ECF in any event.  ECF only agreed to comply with those terms as a condition of its obligations to Brandwatch UK, and X thus lacks standing to enforce them against ECF.  All of the case law X cites in its Opposition about valid jurisdictional consents pertains to parties who were actually in privity with X/Twitter through their acceptance of its terms and use of the service.  X may not insert itself into a contractual relationship to which it is a stranger to enforce terms to which it is not a party.  Indeed, there is a particular irony that X is attempting to invade ECF's contractual relationship with Brandwatch UK all while weakly alleging that ECF somehow interfered with X's own contractual relationship with Brandwatch.  X is well outside of its lane here, and has no rights to enforce in relation to ECF's contracts with Brandwatch UK.

Third, even if X could enforce its TOS against ECF (it cannot), and even if the terms provided for jurisdiction in this Court (they do not), the present dispute is not subject to such forum selection clause.  X concedes that its forum selection clause applies to "[a]ll disputes related to these Terms or the Services [i.e., Twitter's services]."  Dkt. 64-2 at 11.  But the present action is not about

---

[1] X's Non-EU Terms state that they are "between you and Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103 U.S.A."  Dkt. 64-2 at 11.  The EU Terms, by contrast, state that they are between "you and **Twitter International Unlimited Company** (Co. number 503351, VAT number IE9803175Q), ***an Irish company*** with its registered office at One Cumberland Place, Fenian Street Dublin 2, D02 AX07 Ireland."  *Id.* at 18 (emphases added).  That X contracts with EU parties via an Irish affiliate only further indicates the lack of a sufficient U.S. link for Rule 4(k)(2) and due process purposes.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2                    ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

X/Twitter's terms or its Services—it is, as the AC makes plain, about the use of *Brandwatch*'s services, CCDH's reporting, and the Defendants' alleged interference with X's entirely separate set of contracts with Brandwatch.  The forum clause would therefore not cover this dispute in any event. *See In re Orange, S.A.*, 818 F.3d 956, 963 (9th Cir. 2016) (affirming that forum selection clause did not govern dispute because the claims fell outside of the scope of the agreement).  X's primary argument for jurisdiction over ECF fails for all these reasons.

### 2.     X Fails to Carry Its Burden to Establish this Court's Jurisdiction over ECF

X's other jurisdictional arguments fare just as poorly.  X principally attempts to establish nationwide specific personal jurisdiction under Rule 4(k)(2).  But the Opposition is most notable for the myriad ways in which it misstates the Ninth Circuit's governing legal standard, ignores X's own allegations that doom its arguments, and relies on an abrogated "individual targeting" theory.

### a.     X's Unsupported Allegations Cannot Support Personal Jurisdiction in the Face of ECF's Evidence.

First, X misstates the governing evidentiary standard for a motion to dismiss for lack of personal jurisdiction in an attempt to rest on its unsupported, insufficient, and disproven allegations. In personal jurisdiction challenges, the Court may not "assume the truth of allegations in a pleading which are contradicted by affidavit." *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (citation omitted).  Here, ECF's evidence in Mr. Després's declaration both contradicts the allegation that ECF targeted CCDH's U.S. entity and confirms that all of ECF's contracts with Brandwatch are governed by English law.  Dkt. 49 ("Mot.") at 2, 6-7; Després Decl. ¶¶ 3-14, Exs. A, B, C, D & E.  Thus, contra X, its allegations that the U.S. was the focus of ECF's efforts are not "uncontroverted," Dkt. 61 ("Opp.") at 1, 3, and therefore cannot be taken at face value because "[c]onflicts in the evidence are resolved in the plaintiff's favor only if the plaintiff submits admissible evidence." *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1037 (N.D. Cal. 2011). X has not provided *any* contradictory admissible evidence here and thus cannot rely on its unsupported—and insufficient—allegations.  Its argument fails for this reason alone.

Even a cursory glance at ECF's evidence controverts X's bare allegation that ECF expressly aimed its activities at the U.S.  First, the actual contracts between ECF and Brandwatch UK are

between a Dutch and UK entity, respectively, and provide that any dispute is to be heard in English courts under English law.  Mot. at 2; Déprés Decl. ¶¶ 10-12, Exs. A, B, C.  And as explained in the Motion (at 6-7), the email chain in Exhibit D to Déprés's declaration clearly shows that Brandwatch knowingly granted (and restored) access for Callum Hood (via the address info@counterhate.org), who is a <u>UK resident</u> and <u>employee of CCDH *UK*</u>.  Dkt 49-6 at 8.  This chain shows:

- On May 12, 2022, Dámaris Queiruga of Brandwatch UK (whose email footer indicates her "LONDON" location) wrote: "Hi Callum, My Support Team let me know that you reached out to them because you are unable to log into your Brandwatch account…. The work will be finalised by the end of the day and will be happy to notify you once this has happened so you can log back in."

- Callum Hood (CCDH UK) replied: "Thanks Damaris – that makes sense, we'll look for an update from you."

- On May 13, 2022, Ms. Queiruga wrote to Mr. Hood and two representatives of ECF: "Hi Josh, Callum & Claudia, I am delighted to inform you that your upgrade to the new segmentation UI has been successful and you can now log back into the platform."

Dkt. 49-5 at 2-3.

   None of these individuals involved in CCDH's access to Brandwatch is based in the U.S., and X has presented no evidence to show otherwise.[2]  Instead, X simply repeats, without evidence, the colorful but insignificant mantra that ECF "reached into" the U.S. to provide the login to CCDH.  *See, e.g.*, Opp. at 1.  Even if ECF's evidence did not disprove this allegation (and it does), the simple provision of a login to a U.S. entity would not be enough to confer jurisdiction because jurisdiction cannot lie based on "'random, fortuitous, or attenuated' contacts . . . with other persons affiliated with the State."  *Walden*, 571 U.S. at 286 (citation omitted); *id.* at 284 (to find personal jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State").

   X argues that its allegation is uncontroverted because ECF's evidence "does *not* state that ECF *never* provided" access to "CCDH US."  Dkt. 61 at 9 (emphasis added).  This double-negative is nonsensical, as ECF has plainly shown that it facilitated access to Brandwatch via a UK resident and employee of CCDH UK, and X has submitted no admissible evidence in response.  Thus, X's

---

[2] X offers a new unsupported allegation that this was all due to a "rogue" agent, but there is nothing rogue, unusual, or unlawful about the routine contents of this email chain. Nor would any such allegations change the fundamentally foreign, ex-U.S. nature of all these activities.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4                    ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

1  allegations on their own are insufficient even without, and certainly with, ECF's contrary evidence.

2  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("bare bones assertions of minimum

3  contacts with the forum . . . will not satisfy a plaintiff's pleading burden").

4  **b.    X Ignores Its Jurisdictionally Fatal Server-Related Allegations.**

5  Next, X ignores the fatal allegations about the location and import of its and Brandwatch's

6  computer servers.  In the AC, X alleged that its "data sets were stored, *among other places*, on

7  protected servers in the United States."  AC ¶ 26 (emphasis added).[3]  As ECF points out in its

8  Motion, that some X data may have been located on servers in California or the U.S. is entirely

9  insufficient. Mot. at 8-9; *see, e.g., Prevail Legal, Inc., v. Justin Gordon, et al.*, 2021 WL 1947578,

10  at *6 (N.D. Cal. May 14, 2021) (finding "it 'random' that the GitHub server hosting [plaintiff's]

11  software code happened to be in California").  In opposition, X does not engage with this fatal

12  concession at all.  In any event, that some of X's data or Brandwatch servers may be located in the

13  U.S., among other places, is, at best, precisely the type of "random, fortuitous, or attenuated"

14  connection that cannot support jurisdiction.  *Walden*, 571 U.S. at 286.

15  X cites just one server-access case to support its jurisdictional argument, but it is of no use.

16  In *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, the Court observed that "the connection between

17  defendants and any leased server located in California is fortuitous," and insufficient to establish

18  express aiming, but found jurisdiction based on the direct accessing of *plaintiff's* "own servers" and

19  the commission of an intentional tort by transmitting malicious code "through" those servers.  472

20  F. Supp. 3d 649, 671-72 (N.D. Cal. 2020).  Here, X does not allege that ECF provided access to X's

21  own servers, nor that anything was transmitted to or through X's own servers.  Rather, the only

22  servers allegedly accessed were Brandwatch UK's which contained *data* that had originated from

23  X's servers, a material distinction.  AC ¶ 26 (alleging CCDH "sought and obtained unauthorized

24  access to data sets regarding X that were provided by X Corp. to [Brandwatch]").  X cites no case

25  exercising jurisdiction in such a circumstance—*i.e.*, where it was not the initial server accessed that

26  was the basis for jurisdiction but rather the location of data that fortuitously happened to reside on

27

28  ───────────────
[3] *See also* AC ¶ 29 ("Licensed Materials from X Corp.'s protected servers, *including* in California, would be streamed to servers used by Brandwatch") (emphasis added).

a server accessed by a different application.[4]

Nor does X cite any case in which jurisdiction was found over a party who allegedly *facilitated* unauthorized access to a server but did not actually engage in the unauthorized access itself, which is X's entire theory against ECF here. *See* AC ¶¶ 36-38. In any event, X has already conceded that its data are not stored exclusively on servers in the United States, AC ¶¶ 26 & 29, eviscerating its argument for express aiming at California or the U.S.

### c. X's Individualized Targeting Theory Has Been Abrogated and Rejected.

X then inexplicably doubles down on its individualized targeting theory to assert that its presence in California can be a basis for exercising jurisdiction over ECF. Opp. at 8-10. But, as explained in the Motion, the Supreme Court expressly rejected this plaintiff-focused theory in *Walden*. Mot. at 7 n.5; *see also Briskin v. Shopify, Inc.*, 87 F.4th 404, 416 (9th Cir. 2023) (citing *Walden* in holding plaintiff's presence in forum and fact that he felt harm there did not support personal jurisdiction). Emblematic of X's errors, the one published case it cites for the supposed continued validity of individualized targeting (*Brayton Purcell*), pre-dated *Walden* and has been expressly recognized by the Ninth Circuit as being abrogated by *Walden*. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017) (discussing *Walden*'s rejection of Ninth Circuit's prior "individualized targeting" principle in cases like *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010)); *Briskin*, 87 F.4th at 412 (recognizing *Brayton Purcell*'s abrogation by *Axiom*).

The unpublished cases cited by X further highlight the need for "something more" than a plaintiff's mere residency in the forum or that effects may be felt there. *Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at *5 (C.D. Cal. Oct. 30, 2020) (finding that defendant operating a competing dating website "deliberately targeted its advertising" to "select markets in the United States, including Los Angeles and San Francisco" and used a "Los Angeles based 'Brand Manager'");

---

[4] There is a distinct parallel in X's attenuated server-access theory and its even more attenuated damages theory, which starts with the insignificant sharing of a login and then allegedly leads to the publication of critical reports and the supposed subsequent loss of tens of millions of dollars in revenue from advertisers' independent decisions to redirect their ad spend elsewhere. As explained herein and in CCDH's and ECF's motions, each theory fails as a matter of law.

MANATT, PHELLS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6                                ECF'S REPLY ISO MOTION TO DISMISS
                                 3:23-CV-03836-CRB

1  *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2014 WL 12700983, at *5 (C.D. Cal. Apr. 10, 2014)

2  (noting that defendant "visited [plaintiff] in California for a demonstration" of its product and "made

3  misrepresentations and extortionate threats in emails and phone calls for the purpose of stealing this

4  technology").  The court in *InfoSpan* was careful to note the effect of *Walden*, stating, "[u]nlike

5  *Walden* where none of the defendant's conduct occurred in the forum state, . . . here the Bank

6  engaged in *significant* conduct in the forum state."  *Id.* at *6 (emphasis added).

7        X's misapplication of the standard for nationwide jurisdiction is also evidenced by its

8  repeated citation of *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022).  There, a Japanese adult

9  entertainment producer brought an action against website operators in Hong Kong for copyright

10  infringement.  The Court found jurisdiction because the defendants "both appealed to and profited

11  from a United States audience, and thus expressly aimed the site at the United States."  *Id.* at 926.

12  Express aiming was satisfied because defendants hosted their website in Utah, purchased services

13  for geographic optimization in the U.S., and tailored the website's privacy policy and terms and

14  conditions to U.S. law.  *Id.* at 924-25.  The location of the plaintiff's headquarters was not at issue.

15        In any event, X also concedes in the AC that its contract with Brandwatch "was signed by

16  Twitter International Unlimited Company, a company organized and existing under the laws of

17  Ireland with its headquarters in Dublin."  AC at 9 n.1.  In other words, the very contract with which

18  X asserts Defendants interfered was also between two foreign companies—Brandwatch UK and

19  Twitter's Irish affiliate, further dooming the case for express aiming at the U.S. or California.

20        X further concedes the fundamentally global nature of its grievances, having alleged that it

21  suffered damages due to "CCDH's scare campaign to ***global*** advertisers."  AC at ¶ 5.  In other words,

22  X's claims against ECF are fundamentally based on a Dutch non-profit (ECF), contracting with a

23  UK company (Brandwatch), whose services were accessed by a UK-based employee of a UK entity

24  (CCDH UK), and led to the global publication of reports that allegedly scared off "global"

25  advertisers of X, a multinational company[5] that calls itself the "modern global town square."[6]  *See*

26  _____
   [5] *See supra*, n.1 (TOS provide that X's Irish office contracts with its EU users).

27  [6] Linda Yaccarino, "One year in, the future of X is bright," Oct. 26, 2023,
   https://blog.twitter.com/en_us/topics/company/2023/one-year-in

28

1   *also* Mot. at 6 n.3 (noting X's marketing materials stating that "X is a global product").  None of this

2   comes remotely close to constituting minimum contacts with the United States, nor foreseeability

3   that any harm to X would be felt in the U.S. or California.  *Schwarzenegger v. Fred Martin Motor*

4   *Co.*, 374 F.3d 797, 804 (9th Cir. 2004) (*Calder* "cannot stand for the broad proposition that a foreign

5   act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction.").[7]

### d.    Exercising Personal Jurisdiction over ECF Would Be Unreasonable and Violate Due Process.

X fails to rebut ECF's overwhelming showing that the exercise of specific jurisdiction would

be unreasonable and violate due process.  Mot. at 10-12.  The tenuous connection between the U.S.

and ECF's provision of access via a UK individual under a UK services agreement lacks even the

blush of reasonableness.  X's attempt to prevail on the seven factors does not come close.

*First*, X provides no evidence showing that ECF purposefully injected itself into the U.S.  It

relies instead on the disproven allegation that ECF "reached into" the U.S. by merely providing a

login, and that X's data reside on servers in the U.S., "among other places."  AC ¶ 26.  None of this

is sufficient to confer U.S. jurisdiction because, on these allegations, ECF could not "reasonably

anticipate being haled into court []here."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

297 (1980) (citation omitted); *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th

Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be

anticipated and the less reasonable is its exercise."); Mot. at 10-11 (collecting cases).

This is also far different from X's cited case, in which defendants designed a malware

program explicitly to target the plaintiff's *own* forum-based servers and then actively took part in

the use of that program.  *WhatsApp Inc.*, 472 F. Supp. 3d at 670.  And, here too, X continues

improperly to rely on pre-*Walden* cases for its individualized targeting theory that *Walden*

abrogated.  *See* Opp. at 12 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.

---

[7] X's cases on foreseeability are also easily distinguished.  In *Hydentra HLP Int. Ltd. v. Sagan Ltd.*, the panel noted that the Ninth Circuit has held that "economic loss caused by the intentional infringement of a plaintiff's *copyright* is foreseeable."  783 F. App'x 663, 665 (9th Cir. 2019) (emphasis added).  The holding was particular to intentional copyright infringement, and there was no attenuated causal chain, as there is here.  And in *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, the court found express aiming and numerous impacts and effects on California, including California-based transactions, that went well beyond the plaintiff suffering economic loss in the forum state.  108 F. Supp. 3d 733, 749 (N.D. Cal. 2015).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

1998)).  In any event, in *Panavision*, the defendant had sent a demand letter addressed to the plaintiff in California to propose a sale of a domain name regarding that California-based business. *Panavision*, 141 F.3d at 1323.  No similar purposeful interjection exists here.

**Second**, in assessing the burden on ECF to litigate in this forum, X turns the inquiry on its head, asserting that its burden to litigate abroad "would be similar," as its witnesses and evidence "would largely be located in California."  Opp. at 12.  But X has failed to support its assertion of equal burden with any evidence, and its say-so cannot overcome ECF's evidence showing that it has no U.S. presence at all.  Dkt. 49-1 ¶¶ 5-7; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight" in determining reasonableness of jurisdiction.).  X's argument is easily disproved in any event, as X operates globally, including in Europe, and has offices in both Dublin, Ireland and London, England, where it is actively hiring for open job positions.[8]  X is also the subject of at least one large EU investigation at the moment which, naturally, is taking place in Europe.[9]  In contrast, ECF has no U.S. offices or operations, and has never been a party in a lawsuit in the U.S.  Dkt. 49-1 ¶¶ 5-7, 9.

Further, contra X, advances in technology are insufficient to overcome the bedrock due process concerns that govern this inquiry, and its suggestion would result in forcing foreign defendants to litigate in the U.S. merely because they might have a webcam.  And, of course, that ECF has retained U.S.-based counsel is simply a necessary consequence of X improperly suing ECF in the U.S., as foreign attorneys cannot practice in this Court (*see* L.R. 11-1(a), 11-3(a)(1)), and is immaterial to this factor—otherwise, every foreign defendant that retains local counsel to challenge personal jurisdiction would lose on this factor.

**Third**, re foreign sovereignty, X's arguments fail to overcome the foundational facts that this dispute seeks to bind a Dutch entity over contracts entered with a UK company where those parties

---

[8] https://careers.twitter.com/en#positions, last accessed January 10, 2024 (showing nine open positions in Dublin and London).

[9] Adam Satariano, "Illicit Content on Elon Musk's X Draws E.U. Investigation," N.Y. Times (Dec. 18, 2023), https://www.nytimes.com/2023/12/18/technology/x-twitter-european-union-investigation.html

had chosen English courts and law to hear any dispute.  In X's cited case, the interests of sovereign nations were not a controlling issue because "Defendants sought and obtained extensive and continuous contacts with the American market and should expect to be haled into U.S. courts." *Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.*, 2006 WL 658602, at \*6 (E.D. Cal. Mar. 15, 2006).  Here, X has not alleged facts (and certainly presented no evidence) to show that California or the U.S. has more of an interest than the Netherlands or UK in hearing this dispute.  *See Doe v. Geller*, 533 F. Supp. 2d 996, 1008 (N.D. Cal. 2008) ("The court may presume that England has a sovereign interest in adjudicating a claim against a British corporation and a British resident.").

**Fourth**, X wrongly asserts that California and the U.S. have an overriding interest solely because X is based here and brings a CFAA claim.  But this would mean that any domestic plaintiff who brings any federal claim would prevail as to this factor, which is not the case.  Again, X cites inapplicable case law, as in the cited section of *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336 (9th Cir. 1984), the court considered public interest factors for *forum non conveniens*, and found Arizona had an interest where the contract called for its interpretation under Arizona law.  Not so here.

**Fifth/Sixth/Seventh**, equally, a Dutch or English court would be a more efficient venue to resolve the claims.  X's argument that a U.S. forum is appropriate simply because it brought a claim "under U.S. federal law," Opp. at 13, is circular and, if true, would mean that all cases asserting federal (or state law) claims against foreign defendants must *necessarily* be heard in U.S. courts.  And X fails to establish that there is no alternative forum, weakly asserting that Dutch and UK courts are not "appropriate," *id.*, a misstatement of the standard.  Indeed, the dispute could be brought in a forum that has jurisdiction over ECF, even if the substantive claims might be necessarily different due to local laws.  None of X's due process arguments bears the slightest weight.

### e.   ECF Lacks Minimum Contacts with California.

X devotes barely any energy to arguing that ECF is subject to general or specific jurisdiction in California, and for good reason, as there is simply no basis for such argument.[10]  Opp. at 13-14.

---

[10] Moreover, to establish for nationwide jurisdiction under Rule 4(k)(2), "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).  Thus, X cannot have it both ways.  If ECF is

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

1    As explained in ECF's Motion, the solicitation or receipt of donations is insufficient to confer

2    jurisdiction, Mot. at 4-5, as is the fortuitous location of some of X's servers, particularly where no

3    allegation or evidence sufficiently shows that ECF expressly aimed its activities at California, *id.* at

4    5-10.  *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (holding jurisdiction was not

5    appropriate in California, as the defendant allegedly interfered with a contract "without entering

6    California, contacting any person in California, or otherwise reaching out to California").

7    **B.    Jurisdictional Discovery and Amendment Would Be Futile and Inappropriate.**

8    Nothing that X might find in jurisdictional discovery or add via amendment would alter the

9    above conclusions, and X's request should be summarily denied.  For example, the Opposition

10    asserts that jurisdictional discovery would be appropriate to show that ECF knew that information

11    collected by CCDH would be used to attack X.  Opp. at 14.  But even if this were shown, it would

12    still not constitute the type of link to a forum state or the U.S. that could support the exercise of

13    jurisdiction because *Walden* forecloses such a focus on the location of the plaintiff.

14    X responds to ECF's evidence that shows specifically how it facilitated access via a CCDH

15    UK employee by hypothesizing that evidence might exist to support its already speculative

16    narrative.  But X's suspicions do not warrant a fishing expedition, particularly in the face of ECF's

17    evidence.  *Pebble Beach*, 453 F.3d at 1160 ("Where a plaintiff's claim of personal jurisdiction

18    appears to be both attenuated and based on bare allegations in the face of specific denials made by

19    the defendants, the Court need not permit even limited discovery.") (citation omitted).  And X's

20    offer to amend to allege that a "rogue" ECF agent facilitated CCDH's access would be entirely

21    immaterial to the jurisdictional question, and is already disproved by ECF's evidence that shows

22    Brandwatch was well aware of and even restored CCDH's access via its UK employee Mr. Hood.

23    X's request for invasive discovery and amendment are improper and should be denied.  *See Reynolds*

24    *v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1010 (N.D. Cal. 2020) (quotation omitted) (denying

25    request where facts alleged on "information and belief" offered "little more than a hunch that

26    [jurisdictional discovery] might yield jurisdictionally relevant facts").

27

28    subject to nationwide jurisdiction under Rule 4(k)(2), it *ipso facto* is not and cannot be subject to
general or specific personal jurisdiction in California under the state's long-arm statute.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11                    ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

**C.      X Fails to State a Claim Against ECF.**

X's claims against ECF fail in any event because the AC fails to state any claim.

**CFAA**: As to the CFAA claim, X fails to rebut ECF's cases that hold that there is no civil aiding and abetting theory under CFAA.  Instead, X argues that it pleads a conspiracy claim; but concedes in the AC that "Defendants, *except ECF*, have violated the CFAA [] knowingly, and with intent to defraud X Corp," AC ¶ 82 (emphasis added), such that ECF cannot be liable under CFAA directly or under a conspiracy theory.  And, as X admits, it does not seek to plead an aiding and abetting theory, Opp. at 14, which would be unavailable to it in any event, Mot. at 14.  Further, as ECF's evidence shows, any access was not "without authorization" under 18 U.S.C. § 1030, since Brandwatch representatives knew of, expressly facilitated, and even restored CCDH's access.  This, and the reasons set forth in CCDH's motion doom the CFAA claim against ECF.

**Tortious Interference**: X has no answer for how its attenuated causal chain could support causation or damages.  Instead, in attempting to avoid the anti-SLAPP statute in opposing CCDH's motion, X makes admissions that further doom its tort claims against both ECF and CCDH.  Specifically, X asserts that the gravamen of its claim is *not* the publication of CCDH's reports but rather the initial unauthorized access of X's data on Brandwatch and the interference of X's contracts with Brandwatch.  Dkt. 62 at 1 (X's claims "seek redress for flagrantly unlawful acts committed by all Defendants *before* CCDH could have engaged in any alleged protected activities"), at 4 ("The crux of the Amended Complaint's claims against the Defendants is founded squarely on the Defendants' wrongful conduct leading up to CCDH's release of a particular report").  Taking X's position at face value, there is no logical, plausible, or foreseeable connection between the allegedly unlawful data access and the loss of advertising revenue.  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (for any claim, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged").  The intervening key act is the publication of CCDH's reports, and X admits that "[a]s a direct and proximate result" of CCDH's publication (*not* of the alleged scraping or data access), "at least eight organizations, including large, multinational corporations that have historically run paid advertising on X, immediately paused advertising spend." Dkt. 62 at 6.  This is plainly insufficient to plead causation and recoverable damages, and

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

12

ECF'S REPLY ISO MOTION TO DISMISS
3:23-CV-03836-CRB

1   its tort claims fail as a result. *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) ("It is black-

2   letter law that damages which are speculative, remote, imaginary, contingent or merely possible

3   cannot serve as a legal basis for recovery.") (citation omitted).

4         Moreover, the breach element also fails. X concedes that its tort claims are premised upon

5   a breach of its contracts with Brandwatch, which provide that Brandwatch will "not attempt to (and

6   will not allow others to) . . . provide access to … the Licensed Materials to any third party." Dkt.

7   62 at 29 (emphasis removed). But no matter how X interprets this provision, it cannot support a

8   breach claim because X concedes that Brandwatch did *not* permit CCDH's access. AC ¶ 40

9   ("Brandwatch has [n]ever consented . . . to any of Defendants (except ECF) accessing [X's] data").

10  And even if X argued instead that Brandwatch "allow[ed] others to . . . provide access," such as by

11  maintaining a non-secure system, then (as CCDH notes, *see* Dkt. 47 at 23-24) any breach would be

12  a precondition of the access, not a result of it. In any event, there could be no breach because the

13  Brandwatch terms make clear that CCDH was a "User," rather than a "third party." *See* Dkt. 47 at

14  19-20, 24-25. X's tort claims fail for these reasons, too

15  **III.   CONCLUSION**

16         For the foregoing reasons, ECF respectfully requests that the Court grant its motion and

17  dismiss the AC as to ECF with prejudice.

18  Dated: January 10, 2024                    MANATT, PHELPS & PHILLIPS, LLP

19

20

21                                            By: _____
                                                   Nathaniel L. Bach
22                                                 Thomas Worger
                                                   Kyla Núñez
23
                                                   Attorneys for Defendant
24                                                 STICHTING EUROPEAN CLIMATE
                                                   FOUNDATION
25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13                    ECF'S REPLY ISO MOTION TO DISMISS
                      3:23-CV-03836-CRB