Roberta A. Kaplan*
John C. Quinn*
Matthew J. Craig (SBN 350030)
Amit Jain*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com
* admitted pro hac vice

*Attorneys for Defendants Center for
Countering Digital Hate, Inc. and
Center for Countering Digital Hate Ltd.*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| X CORP.,<br><br>                    Plaintiff,<br><br>       v.<br><br>CENTER FOR COUNTERING DIGITAL HATE, INC., et al.,<br><br>                    Defendants. | Case No. 3:23-cv-03836-CRB<br><br>**DEFENDANTS CENTER FOR COUNTERING DIGITAL HATE, INC. AND CENTER FOR COUNTERING DIGITAL HATE LTD.'S MOTION FOR FEES AND COSTS PURSUANT TO CAL. CODE CIV. PROC. § 425.16, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: Friday, May 10, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6 – 17th Floor<br>Judge: Hon. Charles R. Breyer |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    X Corp. Files an Unprecedented SLAPP Suit to Punish and Silence the CCDH Defendants ................................................................ 2

    B.    The CCDH Defendants Retain Kaplan Hecker and Cohen Williams and Prepare a Thorough Anti-SLAPP Motion to Strike ................................. 3

    C.    The Court Hears Argument on the Anti-SLAPP Motion........................................ 4

    D.    The Court Grants the Anti-SLAPP Motion in Full .................................... 4

III.    LEGAL STANDARD ........................................................................................ 5

IV.    SUMMARY OF ARGUMENT ......................................................................... 6

V.    ARGUMENT ...................................................................................................... 7

    A.    The Hours Counsel Expended Were Necessary and Appropriate to Vindicate the CCDH Defendants' Rights and Dispose of X Corp.'s Unprecedented Claims ............................................................................... 7

    B.    A 25% Reduction of Hours to Exclude Time Expended on the Sole Federal Claim is Not Only Reasonable, but Likely to Undercount Compensable Time ................................................................................... 10

    C.    The Rates Charged by Counsel Are Substantially Below Prevailing Market Rates ................................................................................................ 11

    D.    The CCDH Defendants' Costs Are Reasonable.................................... 14

VI.    CONCLUSION................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**                                                                     Page(s)

3
4

*Cuviello v. Feld Entmt., Inc.*,
   No. 13 Civ. 4951, 2015 WL 154197 (N.D. Cal. Jan. 12, 2015) ........................................ 8

5
6

*Fallay v. San Francisco City & Cnty.*,
   No. 08 Civ. 2261, 2016 WL 879632 (N.D. Cal. Mar. 8, 2016) .............................. 5, 6, 8, 10

7
8

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ..................................................................................................... 6, 9

9

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) ......................................................................................... 12

10
11

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2014) ............................................................................ 1, 5, 7, 8, 11

12
13

*Graham-Sult v. Clainos*,
   No. 10 Civ. 4877, 2012 WL 994754 (N.D. Cal. Mar. 23, 2014) ................................. 11, 14

14
15

*Griffin v. Strauss*,
   No. 22 Civ. 6183, 2024 WL 647650 (C.D. Cal. Jan. 3, 2024) ........................................... 13

16
17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................................... 8

18
19

*Herring Networks, Inc. v. Maddow*,
   No. 19 Civ. 1713, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ............................ 9, 11, 13, 14

20

*Kearney v. Foley & Lardner*,
   553 F. Supp. 2d 1178 (S.D. Cal. 2008) ......................................................................... 5, 11

21
22

*Ketchum v. Moses*,
   17 P.3d 735 (Cal. 2001) ............................................................................................ 5, 6, 7, 12

23
24

*Maloney v. T3 Media, Inc.*,
   No. 14 Civ. 5048, 2015 WL 3879634 (C.D. Cal. May 27, 2015) ..................................... 8, 9

25
26

*Mann v. Quality Old Time Serv., Inc.*,
   42 Cal. Rptr. 3d 607 (Cal. Ct. App. 2006) ......................................................................... 9

27

*Metabolife Int'l, Inc. v. Wornick*,
   213 F. Supp. 2d 1220 (S.D. Cal. 2002) ............................................................................... 5

28

*Mogan v. Sacks, Ricketts & Case LLP*,
    No. 22-15254, 2023 WL 2983577 (9th Cir. Apr. 18, 2023) ................................ 13

*Mogan v. Sacks, Ricketts & Case LLP*,
    No. 21 Civ. 8431, 2022 WL 1458518 (N.D. Cal. May 9, 2022) ........................ 13

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008).................................................................... 7, 13

*Mullan v. Daniels*,
    No. 19 Civ. 4058, 2021 WL 4932726 (N.D. Cal. Apr. 7, 2021)......................... 8

*Nitsch v. DreamWorks Animation SKG Inc.*,
    No. 14 Civ. 4062, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ........................ 13

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    No. 17 Civ. 2824, 2019 WL 8377690 (N.D. Cal. Sept. 24, 2019)....................... 6

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    No. 17 Civ. 2824, 2020 WL 8877818 (N.D. Cal. Apr. 22, 2020)...................... 11

*In re Santa Clarita, LLC*,
    No. 22 Civ. 4261, 2023 WL 8881861 (C.D. Cal. Nov. 20, 2023) ...................... 10

*Skidmore v. Gilbert*,
    No. 20 Civ. 6415, 2022 WL 4625071 (N.D. Cal. Sept. 30, 2022)...................... 11

*Thornbrough v. W. Placer Unified Sch. Dist.*,
    No. 9 Civ. 2613, 2010 WL 3069321 (E.D. Cal. Aug. 3, 2010) ........................ 10

*United States v. Windsor*,
    570 U.S. 744 (2013)................................................................................... 7

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    130 F. Supp. 3d 1331 (C.D. Cal. 2015) ......................................................... 13

*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*,
    45 Cal. Rptr. 3d 633 (Cal. Ct. App. 2006) ...................................................... 5

*Woulfe v. Universal City Studios LLC*,
    No. 22 Civ. 459, 2024 WL 1110914 (C.D. Cal. Feb. 8, 2024)............................ 9

*Wynn v. Chanos*,
    685 F. App'x 578 (9th Cir. 2017) ................................................................. 13

*Wynn v. Chanos*,
No. 14 Civ. 4329, 2015 WL 3832561 (N.D. Cal. June 19, 2015) ........................................ 13

**RULES**

Cal. Code Civ. Proc. § 425.16.............................................................................................. 1, 5, 6

**OTHER AUTHORITIES**

Dan Roe, *Top Big Law Partners Are Earning More Than $2,400 Per Hour, as Rates Continue to Climb*, Am. Law. (Jan. 10, 2024), https://www.law.com/americanlawyer/2024/01/10/top-restructuring-partners-are-earning-more-than-2400-per-hour-as-rates-continue-to-climb/ ........................................................................................................................ 14

Elon Musk (@elonmusk), X (July 18, 2023, 8:26 a.m.), https://twitter.com/elonmusk/status/1681279195253551104............................................................................................. 2

Elon Musk (@elonmusk), X (July 18, 2023, 8:30 a.m.), https://twitter.com/elonmusk/status/1681280344870342657 ............................................................................................. 2

1

## <u>NOTICE OF MOTION AND RELIEF SOUGHT</u>

2      PLEASE TAKE NOTICE that at 10:00 a.m. on Friday, May 10, 2024, or as soon thereafter

3 as the matter may be heard, in Courtroom 6 of the above-captioned Court, Defendants Center for

4 Countering Digital Hate, Inc. ("CCDH US") and Center for Countering Digital Hate Ltd. ("CCDH

5 UK," and, together with CCDH US, the "CCDH Defendants") will and hereby do move this Court

6 for a mandatory award of attorney's fees and costs. Specifically, the CCDH Defendants move this

7 Court for an award consisting of the attorney's fees and costs incurred in connection with the anti-

8 SLAPP portion of their combined special motion to strike and motion to dismiss.

9      Per this Court's March 25, 2024 Order, the CCDH Defendants prevailed on their special

10 motion to strike pursuant to California Code of Civil Procedure § 425.16 as to all three state-law

11 causes of action asserted in Plaintiff X Corp.'s Amended Complaint, Dkt. 10. As the prevailing

12 parties, the CCDH Defendants are entitled to reasonable attorney's fees and costs totaling

13 $319,828.12; as set forth in the attached memorandum, the CCDH Defendants' counsel worked

14 reasonable hours at reasonable hourly rates to achieve total success on their anti-SLAPP motion in

15 a complex, novel, and high-stakes case. This motion is based on this Notice of Motion; the

16 accompanying Memorandum of Points and Authorities; the Declaration of John C. Quinn and

17 attached exhibits; the Declaration of Marc S. Williams and attached exhibit; the pleadings, papers,

18 and records on file in this case; and any further argument or evidence that may be received by the

19 Court.

20      As set forth in the Declaration of John C. Quinn, pursuant to Local Rule 54-5(a), the parties

21 met and conferred on April 5, 2024. The parties were not able to reach agreement.

22      Should X Corp. appeal this Court's March 25, 2024 Order, the CCDH Defendants reserve

23 the right to file a supplemental application to recover their reasonable appellate attorney's fees and

24 costs. *See, e.g.*, *Evans v. Unkow*, 45 Cal. Rptr. 2d 624, 630 (Cal. Ct. App. 1995); *Dove Audio, Inc.*

25 *v. Rosenfeld, Meyer & Susman*, 54 Cal. Rptr. 2d 830, 835 (Cal. Ct. App. 1996).

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

As this Court recognized, this SLAPP suit—filed by X Corp., a multibillion-dollar, privately-held corporation that operates one of the world's largest social media platforms—was "unabashedly and vociferously . . . about punishing the Defendants for their speech." Dkt. 75 at 1. Thankfully, X Corp.'s gambit did not work. In a comprehensive Order, this Court found that the CCDH Defendants had met their burden on the first prong of the anti-SLAPP analysis on X Corp.'s state-law claims, each of which arose from acts in furtherance of the CCDH Defendants' free speech rights. *See id.* at 12-21. And at the second prong of the anti-SLAPP analysis, the Court found the CCDH Defendants' arguments "persuasive." *Id.* at 22, 49. Specifically, the Court embraced three of the five grounds on which the CCDH Defendants urged it to strike X Corp.'s contract claim and two of the five grounds on which the CCDH Defendants urged it to strike X Corp.'s tort claims. *See id.* at 21-35, 49-51. The Court also struck and dismissed X Corp.'s vague, conclusory allegations against fifty anonymous John Doe defendants (the "Doe Defendants"). *See id.* at 51. And the Court, on two independent grounds, denied X Corp. leave to re-amend. *See id.* at 35-43, 51.

As a matter of California law, the Court's Order granting the CCDH Defendants' motion to strike "entitle[s]" these Defendants "to recover [their] attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1). Indeed, consistent with the anti-SLAPP statute's purposes, this fee-shifting provision "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014). Here, the CCDH Defendants seek a reasonable fee award of $318,158 in attorney's fees and $1,670.12 in costs, for a total of $319,828.12, plus any further fees and costs incurred in connection with preparing a reply in support of this motion and attending any hearing on this motion. For the reasons that follow, the award the CCDH Defendants request is eminently reasonable under the circumstances, and the Court should grant this motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  X Corp. Files an Unprecedented SLAPP Suit to Punish and Silence the CCDH Defendants

In July 2023, prior to filing the instant litigation, X Corp.'s owner, chairman, and CTO posted on the X platform that the CCDH Defendants were "[t]ruly evil" and that their CEO, Imran Ahmed, is a "rat."[1] Shortly thereafter, X Corp. sent a letter to Mr. Ahmed threatening litigation under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. *See* Declaration of John C. Quinn ("Quinn Decl."), Ex. A. Mere hours after the CCDH Defendants responded by dismissing the threat as "bogus" and a "transparent attempt to silence honest criticism," *see id.*, Ex. B, X Corp. filed this lawsuit asserting altogether different claims and represented by a new lawyer, *see* Dkt. 1. On August 7, 2023, X Corp. filed an amended complaint. *See* Dkt. 10 ("AC").

X Corp.'s amended complaint asserted a breach of contract claim arising out of alleged "scraping" in purported violation of X Corp.'s Terms of Service (ToS); two tort claims arising from use of an analytics tool by a company called Brandwatch, purportedly in violation of Brandwatch's agreement with Defendant Stichting European Climate Foundation (ECF) and multiple agreements between Brandwatch and X Corp., none of which X Corp. attached to its pleadings; and a federal Computer Fraud and Abuse Act (CFAA) claim based on many of the same allegations underlying the tort claims. *See generally id.* X Corp. sought "at least tens of millions of dollars" in damages on its state-law claims based on third-parties' reactions to the CCDH Defendants' speech. *Id.* ¶¶ 78-79, 93, 99. At the time—before X Corp. "filed a similar suit . . . against Media Matters, another non-profit media watchdog," *see* Dkt. 75 at 17 n.11—no social media platform had ever sued over non-commercial "scraping" for research and debate purposes, nor filed any suit remotely like this one. Moreover, unlike in the Media Matters lawsuit, X Corp. did not sue the CCDH Defendants for defamation; instead, by pleading a convoluted mix of other claims, X Corp. tried, as the Court saw, to "have it both ways—to be spared the burdens of pleading a defamation claim, while bemoaning

---

[1] Elon Musk (@elonmusk), X (July 18, 2023, 8:26 a.m.), https://twitter.com/elonmusk/status/1681279919253551104; Elon Musk (@elonmusk), X (July 18, 2023, 8:30 a.m.), https://twitter.com/elonmusk/status/1681280344870342657.

the harm to its reputation, and seeking punishing damages based on reputational harm." *Id.* at 16-17 (footnote omitted).

**B.    The CCDH Defendants Retain Kaplan Hecker and Cohen Williams and Prepare a Thorough Anti-SLAPP Motion to Strike**

To defend against X Corp.'s unprecedented suit (and to respond to its pre-filing letter threat), the CCDH Defendants retained Kaplan Hecker & Fink LLP ("Kaplan Hecker" or "KHF"), a New York City-based, nationally renowned boutique litigation firm with deep experience in high-profile litigation and constitutional issues. *See* Dkt. 19; Quinn Decl. ¶ 3. The CCDH Defendants also retained Cohen Williams LLP ("Cohen Williams" or "CW"), a Los Angeles-based, nationally recognized boutique law firm, as local counsel. *See* Dkt. 17; Declaration of Marc S. Williams ("Williams Decl.") ¶ 2. KHF and CW quickly assembled a highly qualified team of attorneys, which analyzed X Corp.'s amended complaint and, in consultation with CCDH, began to develop an anti-SLAPP motion to strike the state-law claims and a Rule 12(b)(6) motion to dismiss the federal CFAA claim. *See* Quinn Decl. ¶¶ 6-8.

To develop defenses against X Corp.'s novel claims, KHF attorneys pored over the relevant contracts and terms (to the extent they were available to the CCDH Defendants), conducted extensive legal research on numerous substantive and procedural questions across state and federal law, and communicated and coordinated closely with the CCDH Defendants on strategy, decision-making, and factual/technical questions. *See id.* ¶¶ 9-10. Even as they worked to defeat X Corp.'s complex web of creative theories and protect the CCDH Defendants from debilitating liability, the attorneys strove to limit costs in multiple ways.

*First*, the attorneys affirmatively pursued and entered into two stipulations with X Corp.'s counsel. *See id.* ¶¶ 11-13. The first of these stipulations set forth an agreed-upon briefing schedule and deferred certain discovery and case management deadlines that could have been, and indeed were, obviated by the Court's ruling in the CCDH Defendants' favor. *See* Dkt. 24; Dkt. 30; Dkt. 75. The second stipulation allowed the CCDH Defendants to file a single, joint motion of no longer than 25 pages combining their anti-SLAPP and dismissal arguments, rather than filing two or even four separate motions for each CCDH Defendant and each form of relief. *See* Dkt. 42; Dkt. 44.

*Second*, prior to filing the combined motion, the KHF team communicated with X Corp.'s counsel to affirmatively disclose evidence revealing that key allegations in X Corp.'s amended complaint were inaccurate, rendering counts two through four (the CFAA claim and the state tort claims) non-viable. *See* Quinn Decl. ¶ 12. The KHF team urged X Corp. to dismiss these counts, but X Corp. refused. *See id.* ¶¶ 12-13.

The CCDH Defendants ultimately filed a combined motion to dismiss and anti-SLAPP motion to strike on November 16, 2023, asserting (as relevant here) two independent grounds that brought X Corp.'s claims doubly within the scope of the anti-SLAPP statute, five independent grounds for striking the contract claim, five independent grounds for striking the tort claims, an additional argument for dismissal of the Doe Defendants, and arguments against leave to amend. *See id.* ¶¶ 14-15; Dkt. 47. The motion cited nearly 80 cases. *See* Dkt. 47 at ii-vi. X Corp. filed its 33-page opposition brief on December 22, 2023, *see* Dkt. 62, and the CCDH Defendants filed a comprehensive reply brief on January 10, 2024, *see* Dkt. 65; Quinn Decl. ¶ 16.

### C.      The Court Hears Argument on the Anti-SLAPP Motion

On February 1, 2024, the Court scheduled argument on the combined anti-SLAPP motion and motion to dismiss, as well as ECF's motion to dismiss. *See* Quinn Decl. ¶ 17; Dkt. 68. In anticipation of argument, which KHF partner John C. Quinn led for the CCDH Defendants, the KHF team prepared additional written materials and held prep meetings and moot arguments. *See* Quinn Decl. ¶ 17. The Court ultimately held over one and a half hours of oral argument on February 29, 2024. *See id.*

### D.      The Court Grants the Anti-SLAPP Motion in Full

On March 25, 2024, the Court issued an Order granting the CCDH Defendants' anti-SLAPP motion in full. *See* Dkt. 75; Quinn Decl. ¶¶ 18-20. The Court struck all three of X Corp.'s state-law claims—and resoundingly so. The Court, agreeing with the CCDH Defendants, held that the anti-SLAPP statute applied to X Corp.'s state-law claims, *see* Dkt. 75 at 12-21; that X Corp. failed to demonstrate a probability of prevailing on its contract claim for three of the five grounds asserted in the CCDH Defendants' anti-SLAPP motion, *see id.* at 21-35; that X Corp. failed to demonstrate a probability of prevailing on its tort claims for two of the five grounds asserted in the CCDH

1   Defendants' anti-SLAPP motion, *see id.* at 49-51; that X Corp. independently failed to state a claim

2   against the Doe Defendants, *see id.* at 51; and that leave to amend was inappropriate for two

3   independent reasons, *see id.* at 35-43, 51. The Court did not reject any of the CCDH Defendants'

4   additional arguments for dismissal; it simply did not reach them. *See id.* at 21-22, 44, 49. The Court

5   also repeatedly and favorably cited Mr. Quinn's remarks at oral argument. *See id.* at 26, 40-41, 43.

6       The Court also granted ECF's motion to dismiss. *See* Dkt. 76. Later that day, the Court

7   issued its Judgment in favor of the Defendants. *See* Dkt. 77. The parties met and conferred on this

8   motion on April 5, 2024, and did not reach agreement. *See* Quinn Decl. ¶ 41.

9   ### III.   LEGAL STANDARD

10      Under California's anti-SLAPP statute, the "prevailing defendant on a special motion to

11  strike shall be entitled to recover that defendant's attorney's fees and costs." Cal. Code Civ. Proc.

12  § 425.16(c)(1). In other words, "any SLAPP defendant who brings a successful motion to strike is

13  entitled to mandatory attorney fees." *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001); *accord,*

14  *e.g.*, *Fallay v. San Francisco City & Cnty.*, No. 08 Civ. 2261, 2016 WL 879632, at *2 (N.D. Cal.

15  Mar. 8, 2016) (Breyer, J.).

16      Like the rest of the anti-SLAPP statute, the fee recovery provision must be "construed

17  broadly," *id.* at *3, "so as to effectuate the legislative purpose of reimbursing the prevailing

18  defendant for expenses incurred in extracting herself from a baseless lawsuit," *Graham-Sult*, 756

19  F.3d at 752 (quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 45 Cal. Rptr. 3d

20  633, 637 (Cal. Ct. App. 2006)). As a result, although work performed strictly on federal claims is

21  not compensable, "[c]ourts now agree that a prevailing defendant may recover fees for work

22  performed 'in the context of, and . . . inextricably intertwined with, the anti-SLAPP motion.'"

23  *Fallay*, 2016 WL 879632, at *3 (collecting cases and quoting *Metabolife Int'l, Inc. v. Wornick*,

24  213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002)). This includes instances in which motions to strike

25  and motions to dismiss federal claims involve common facts and overlapping legal theories. *See,*

26  *e.g.*, *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008). "[F]ees incurred

27  in litigating the award of attorney fees" are also compensable. *Ketchum*, 17 P.3d at 747.

28

1    The anti-SLAPP fee analysis utilizes the lodestar method, under which a court

2 "multipl[ies] the number of hours reasonably spent by counsel by a reasonable hourly rate."

3 *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17 Civ. 2824, 2019 WL 8377690, at *2 (N.D.

4 Cal. Sept. 24, 2019) (citing *Ketchum*, 17 P.3d at 742). This lodestar figure "may be adjusted by

5 the court based on factors including . . . (1) the novelty and difficulty of the questions involved,

6 (2) the skill displayed in presenting them, [and] (3) the extent to which the nature of the litigation

7 precluded other employment by the attorneys," among others. *Ketchum*, 17 P.3d at 741. In

8 addition, "[a]n award of fees and costs in an anti-SLAPP case must be reasonable, and courts have

9 broad discretion in determining what is reasonable." *Fallay*, 2016 WL 879632, at *2. "The degree

10 of success obtained is the most critical factor in determining a reasonable fee." *Id.* (citing *Farrar

11 v. Hobby*, 506 U.S. 103, 114 (1992)).

12   **IV.    SUMMARY OF ARGUMENT**

13    The CCDH Defendants prevailed against a SLAPP suit designed "unabashedly and

14 vociferously," Dkt. 75 at 1, to "chill the valid exercise of the constitutional right[] of freedom of

15 speech," Cal. Code Civ. Proc. § 425.16(a). As a result, they are entitled to mandatory fees and costs.

16 And the fees and costs sought here are reasonable and appropriate.

17    The CCDH Defendants seek a total of $319,828.12 in fees and costs, including $318,158

18 for 502.3 hours of legal work by KHF and CW attorneys and $1,670.12 in costs. As set forth below,

19 all of the hours used to calculate this award were necessary in order to dispose of X Corp.'s novel

20 state-law claims and prevail decisively on the anti-SLAPP motion. Still, the CCDH Defendants

21 propose to reduce the pre-Order fees and costs which they seek by 25%, which more than suffices

22 to exclude any fees or costs attributable solely to X Corp.'s lone, dismissed federal claim—a

23 generous reduction given that this claim substantially overlapped, both legally and factually, with

24 two of X Corp.'s three stricken state-law claims. Moreover, the requested hourly rates are eminently

25 reasonable; they constitute a discount of more than 50% from the attorneys' standard commercial

26 rates, which are themselves exceptionally competitive in the relevant market for attorneys of

27 comparable skill, experience, and reputation. Finally, the CCDH Defendants seek reasonable costs

28 for legal research expenses and courier costs incurred in connection with the anti-SLAPP motion,

1    with all pre-Order fees and costs again reduced by a generous 25% to account for the federal claim.

2    Accordingly, the Court should award the amount requested in full, plus any additional fees and

3    costs that may be incurred in connection with further briefing on this motion and any hearing.

4    **V.    ARGUMENT**

5        **A.    The Hours Counsel Expended Were Necessary and Appropriate to Vindicate
             the CCDH Defendants' Rights and Dispose of X Corp.'s Unprecedented Claims**
6

7        Under the anti-SLAPP statute, a fee award "should ordinarily include compensation for *all*

8    the hours *reasonably spent*, including those relating solely to the fee." *Ketchum*, 17 P.3d at 742.

9    Appropriate fees are assessed on a case-by-case basis, as overreliance on "reference to other cases

10   would violate the principle that each fee application under the anti-SLAPP statute must be assessed

11   on its own merits[,] taking into account what is reasonable under the circumstances." *Graham-Sult*,

12   756 F.3d at 752 (internal quotation marks and alterations omitted). "By and large, the court should

13   defer to the winning lawyer's professional judgment as to how much time [s]he was required to

14   spend on the case; after all, [s]he won, and might not have, had [s]he been more of a slacker."

15   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

16       Here, as set forth in the Quinn Declaration and its Exhibit E (the Fees Spreadsheet), the

17   CCDH Defendants seek fees for 502.3 hours of work, along with any additional hours expended

18   on further briefing or argument on this motion. *See* Quinn Decl. ¶¶ 21-22; *id.* Ex. E; Willams Decl.

19   ¶¶ 7-8. The hours are related to the following eight categories of compensable tasks:

20   • Reviewing the complaint and amended complaint and developing a defense strategy;

21   • Researching and drafting the successful anti-SLAPP motion and supporting documents;

22   • Meeting and communicating with the CCDH Defendants specifically about the anti-SLAPP

23       motion and the defense strategy;

24   • Preparing two stipulations relating to, and inextricably intertwined with, the anti-SLAPP

25       motion;

26   • Researching and communicating with X Corp.'s counsel about the false allegations

27       underlying three counts of X Corp.'s amended complaint, including two of the three claims

28       subject to the anti-SLAPP motion;

- Reviewing X Corp.'s opposition brief and researching and drafting a reply in support of the successful anti-SLAPP motion;

- Preparing for and participating in oral argument on the anti-SLAPP motion; and

- Preparing this motion for attorney's fees and costs.

*See* Quinn Decl. ¶ 32.

All of these tasks are compensable, because all of them involve either the preparation of the anti-SLAPP motion itself or activities performed "in the context of, and . . . inextricably intertwined with, the anti-SLAPP motion." *Fallay*, 2016 WL 879632, at *3. Indeed, "[c]ourts have awarded time spent on motions to dismiss, discovery, notices of removal, and answers to complaints, as long as that work was connected to the anti-SLAPP motion." *Mullan v. Daniels*, No. 19 Civ. 4058, 2021 WL 4932726, at *2 (N.D. Cal. Apr. 7, 2021) (citing *Graham-Sult*, 756 F.3d at 752); *see also, e.g.*, *Cuviello v. Feld Entmt., Inc.*, No. 13 Civ. 4951, 2015 WL 154197, at *4 (N.D. Cal. Jan. 12, 2015) (allowing recovery for hours spent on "client communication" despite "straightforward nature of the particular anti-SLAPP motion"). To be clear, the requested hours do not include time spent advising the CCDH Defendants on matters not pertaining to the anti-SLAPP motion, nor time spent on any administrative filings not specifically connected to the anti-SLAPP motion.

Moreover, to the extent X Corp. might wish to reduce the requested hours "because the Court did not reach a handful of [the CCDH Defendants'] arguments in the Anti-SLAPP motion and because defense counsel researched a number of issues that they ultimately declined to raise in the Anti-SLAPP motion," any such effort should be rejected: Because the CCDH Defendants "won an unqualified victory on the entirety of Plaintiff's action," X Corp. is not entitled to "second-guess [their] successful tactical choices." *Maloney v. T3 Media, Inc.*, No. 14 Civ. 5048, 2015 WL 3879634, at *9 (C.D. Cal. May 27, 2015). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Furthermore, as noted above, X Corp. had a chance to reduce counsel's hours by dismissing its baseless tort claims in view of the evidence the CCDH Defendants

provided—yet it declined to do so, forcing counsel to brief, argue, and ultimately win a motion to strike those claims. *See* Quinn Decl. ¶¶ 12-13.

Finally, the overall number of hours is reasonable under the circumstances. In evaluating reasonableness, the Court should consider "the significance of the overall relief obtained by defendants in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Woulfe v. Universal City Studios LLC*, No. 22 Civ. 459, 2024 WL 1110914, at *9 (C.D. Cal. Feb. 8, 2024) (quoting *Mann v. Quality Old Time Serv., Inc.*, 42 Cal. Rptr. 3d 607, 619 (Cal. Ct. App. 2006)). Courts have found similar hours reasonable for pleading-stage anti-SLAPP motions. In *Woulfe*, for instance, the district court found an award of 80% of 521 claimed hours, or roughly 417 hours, appropriate for an anti-SLAPP motion to strike at the pleading stage. *See id.* at *9-10.[2] Other cases have found similar amounts of time appropriate for "strategizing, researching, and briefing [an] anti-SLAPP motion . . . and . . . fee motion." *Herring Networks, Inc. v. Maddow*, No. 19 Civ. 1713, 2021 WL 409724, at *2, 10 (S.D. Cal. Feb. 5, 2021) (holding 363.1 hours reasonable for these purposes); *Maloney*, 2015 WL 3879634, at *6 (rejecting the contention that a total of "over 400 hours preparing [a] SLAPP motion and Reply" was unreasonable).

The requested fee award is particularly appropriate here, given the stakes of this matter and the success achieved. Under the circumstances of this case, where a multibillion-dollar social media company sought to silence a nonprofit's critical speech and evade the requirements of a defamation claim by bringing a confusing slew of other state-law claims purportedly based on a tangled web of contracts, the 502.3 hours spent on the anti-SLAPP motion and matters inextricably intertwined with it were demonstrably reasonable—indeed, the CCDH Defendants' total success in striking all of X Corp.'s state-law claims for "at least tens of millions of dollars in damages," AC ¶¶ 78-79, 93, 99; *see Farrar*, 506 U.S. at 114, speaks for itself.

---

[2] The court proceeded to reduce the award by an additional 80% due to the fact that the defendant in that case "lost on some of the more difficult issues raised by the anti-SLAPP motion" and prevailed only on issues "easily disposed of." *Id.* at *10. In contrast, the CCDH Defendants prevailed across the board on their anti-SLAPP motion to strike. *See generally* Dkt. 75.

1

2

**B.      A 25% Reduction of Hours to Exclude Time Expended on the Sole Federal Claim is Not Only Reasonable, but Likely to Undercount Compensable Time**

As explained in the Quinn Declaration, the above-mentioned calculation of recoverable hours of legal work incorporates a generous 25% reduction to account for the fact that one of X Corp.'s four claims against the CCDH Defendants arose under federal law and was not subject to the anti-SLAPP motion. *See* Quinn Decl. ¶ 33; Dkt. 75 at 12 n.9.[3] In circumstances like these, where parties have filed combined anti-SLAPP motions and motions to dismiss in order to promote efficiency and judicial economy, courts routinely reduce awards by the percentage of claims not subject to the anti-SLAPP statute (here, 25%). *See, e.g.*, *In re Santa Clarita, LLC*, No. 22 Civ. 4261, 2023 WL 8881861, at *4 (C.D. Cal. Nov. 20, 2023) ("[T]he Court reduces the hours and lodestar associated with the motions to dismiss by 40% to reflect that two of the five claims addressed in those motions were not at issue in the anti-SLAPP motions."); *Fallay*, 2016 WL 879632, at *5 (where three of seven claims addressed in motion were federal claims, "the Court will reduce counsel's time to 4/7 of the time sought"); *Thornbrough v. W. Placer Unified Sch. Dist.*, No. 9 Civ. 2613, 2010 WL 3069321, at *3 (E.D. Cal. Aug. 3, 2010) (finding prevailing party "entitled to recover" 50% of the relevant fees where three of seven claims were based on federal law).

Notably, this 25% reduction likely *undercounts* the hours counsel expended towards the anti-SLAPP issues for two reasons. *First*, unlike in cases where the federal claims are wholly separate from the state claims, X Corp.'s federal CFAA claim shared a significant factual nexus with X Corp.'s state tort claims (in that all three arose from Brandwatch use), and—as reflected in the CCDH Defendants' combined motion—the two claims featured significant legal overlap, too. *See* Quinn Decl. ¶ 33.[4] Because "[a]ll expenses incurred on common issues of fact and law qualify

---

[3] The CCDH Defendants have not applied this 25% reduction to hours expended on this motion for attorney's fees and costs, as none of those hours concern X Corp.'s dismissed federal CFAA claim.
[4] In particular, the CCDH Defendants argued that X Corp. failed to state a claim under the CFAA in part because the allegations were entirely consistent with the Brandwatch user terms. *See* Dkt. 47 at 19-20. For the same reason, the CCDH Defendants explained, X Corp. failed to plead any disruption or breach of its own agreements with Brandwatch, destroying its probability of prevailing on its state tort claims. *See id.* at 24-25. And the lack of any violation of the Brandwatch user terms independently underscored the implausibility of X Corp.'s speculative allegation that the CCDH Defendants knew of X Corp.'s agreements with Brandwatch, another necessary element of the tort claims. *See id.* at 25.

1    for an award of attorneys' fees under the anti-SLAPP statute," *Kearney*, 553 F. Supp. 2d at 1184,

2    the actual proportion of hours that attorneys expended on exclusively federal issues is likely to fall

3    well below 25%.

4        *Second*, in this case, a "percentage of claims" metric yields a more conservative hours

5    estimate than the "percentage-of-pages" metric that "[m]any courts" have used instead. *Resolute*

6    *Forest Prods., Inc. v. Greenpeace Int'l*, No. 17 Civ. 2824, 2020 WL 8877818, at *2-3 (N.D. Cal.

7    Apr. 22, 2020) (collecting cases applying each approach); *see, e.g.*, *Skidmore v. Gilbert*, No. 20

8    Civ. 6415, 2022 WL 4625071, at *7 (N.D. Cal. Sept. 30, 2022) (reducing hours by 30% "given that

9    approximately one third of the Dispositive Motions were committed to dismissing Plaintiff's

10   federal claims without any overlap with the anti-SLAPP motion"). In fact, the CCDH Defendants

11   spent just five of 25 pages (20%) in their anti-SLAPP motion (exclusive of the required summary

12   of argument) on arguments for dismissing the federal claim, Dkt. 47 at 18-23, and the Court spent

13   just four of 52 pages (8%) in its Order dismissing the federal claim, Dkt. 75 at 43-47. Given the

14   factual and legal overlap between the federal claim and the anti-SLAPP issues, and as evidenced

15   by the percentage-of-pages metric, applying a 25% reduction is more than reasonable here.

16       **C.      The Rates Charged by Counsel Are Substantially Below Prevailing Market**

17             **Rates**

18       In addition, as set forth in the Quinn Declaration, Williams Declaration, and Fees

19   Spreadsheet accompanying this motion, the CCDH Defendants request an award reflecting the

20   reasonable (and discounted) amounts they were charged and paid.

21       To determine a reasonable hourly rate, this Court must "look[] to the rate prevailing in the

22   community for similar work performed by attorneys of comparable skill, experience, and

23   reputation," considering "affidavits of the movant's attorney . . . regarding prevailing fees in the

24   community" as well as "rate determinations in other cases," the court's "own knowledge of the

25   relevant legal market, the complexity of the legal issues at stake, and the reputation and experience

26   of counsel." *Herring Networks*, 2021 WL 409724, at *4 (cleaned up); *accord Graham-Sult v.*

27   *Clainos*, No. 10 Civ. 4877, 2012 WL 994754, at *3 (N.D. Cal. Mar. 23, 2014), *aff'd in relevant*

28   *part and rev'd in part*, 756 F.3d 724 (9th Cir. 2014). The goal is to "fix the fee at the fair market

1   value for the legal services provided." *Ketchum*, 17 P.3d at 743; *accord, e.g.*, *Gonzalez v. City of*

2   *Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) ("The 'prevailing market rates in the relevant

3   community' set the reasonable hourly rate for purposes of computing the lodestar amount.").

4          Here, the CCDH Defendants retained KHF and CW on an hourly fee basis. *See* Quinn Decl.

5   ¶¶ 24, 34; Williams Decl. ¶¶ 3, 6-7. The CCDH Defendants seek fees for the services of five KHF

6   attorneys and two CW attorneys. *See* Quinn Decl. ¶¶ 25-30, 35; Williams Decl. ¶¶ 3-7. The KHF

7   attorneys include partner Roberta A. Kaplan, an acclaimed litigator with over three decades of legal

8   experience; partner John C. Quinn, a leading litigator who has over ten years of experience with

9   complex civil litigation and who successfully argued the motion; special counsel Matthew J. Craig,

10  a rising star with a decade of experience with trial and appellate litigation; senior associate Amit

11  Jain, a former Supreme Court clerk with a range of civil and criminal litigation experience; and law

12  clerk Avisha Sabaghian, a skilled recent graduate of Harvard Law School. *See* Quinn Decl. ¶¶ 25-

13  30. For these attorneys, the CCDH Defendants request fees at the highly discounted public interest

14  rates charged and paid in this matter, namely:

15  - For Ms. Kaplan, $950 for 2023 and $750 for 2024. *See id.* ¶¶ 26, 35.

16  - For Mr. Quinn, $900 for 2023 and $725 for 2024. *See id.* ¶¶ 27, 35.

17  - For Mr. Craig, $875 for 2023 and $700 for 2024. *See id.* ¶¶ 28, 35.

18  - For Mr. Jain, $700 for 2023 and $575 for 2024. *See id.* ¶¶ 29, 35.

19  - For Ms. Sabaghian, $550 for 2023 and $350 for 2024. *See id.* ¶¶ 30, 35.

20         The CW attorneys include partner Marc S. Williams, a renowned litigator with a 25-year

21  legal career, and counsel Neil S. Jahss, a highly respected advocate with nearly two decades of civil

22  litigation work. *See* Williams Decl. ¶¶ 6-7. The CCDH Defendants request fees be awarded at Mr.

23  Williams's discounted hourly rate of $600 and Mr. Jahss's discounted hourly rate of $550. *See id.*

24         To be clear, Kaplan Hecker charged the CCDH Defendants these heavily discounted rates

25  (reduced by more than 50% from KHF's commercial rates) due to KHF's strong commitment to

26  litigating in the public interest, the burdens imposed by complex federal litigation on relatively

27  small nonprofits, and the importance of the issues at stake. *See* Quinn Decl. ¶ 34 (outlining the rates

28  the CCDH Defendants and their insurer paid to KHF in 2023 and 2024). Indeed, had KHF taken

on a different, private representation instead of offering the CCDH Defendants reduced public interest rates for this representation, it reasonably could have billed its time at much higher commercial rates rather than the more heavily discounted rates the CCDH Defendants actually paid. *See* Quinn Decl. ¶ 34; *cf. Moreno*, 534 F.3d at 1111 (in calculating number of hours to be compensated, "considering whether, in light of the circumstances, the time could reasonably have been billed to a private client").

The requested rates are plainly reasonable. Even setting aside the unique circumstances of this case, they are substantially below what courts in this District and others in California have approved in other cases. For instance, Judge Orrick found hourly rates for partners of nearly $1,100 "reasonable . . . for attorneys in the Bay Area"—*nine years ago. See Wynn v. Chanos*, No. 14 Civ. 4329, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017). Seven years ago, Judge Koh found a partner's $1,200 hourly rate reasonable, noting that it was "the same rate that he charges clients, including corporations that are billed hourly, which provides a market-based cross-check." *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14 Civ. 4062, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017). A court in the Central District, too, found that certain "partners at major law firms" billed up to $1,100 per hour nine years ago. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015); *accord, e.g.*, *Griffin v. Strauss*, No. 22 Civ. 6183, 2024 WL 647650, at *4 (C.D. Cal. Jan. 3, 2024) (finding hourly rates of up to $1,100 for a partner at Jones Day reasonable); *Mogan v. Sacks, Ricketts & Case LLP*, No. 21 Civ. 8431, 2022 WL 1458518, at *2-3 (N.D. Cal. May 9, 2022) (finding hourly rates of up to $1,015.75 reasonable for a partner with six years of litigation experience), *aff'd*, No. 22-15254, 2023 WL 2983577 (9th Cir. Apr. 18, 2023); *Herring Networks*, 2021 WL 409724, at *5-7 (finding hourly rates of $1,150 for a partner and $720 for a senior associate reasonable three years ago in the San Diego community, while distinguishing evidence of higher rates in this District as being "outside the relevant community").

Importantly, in the years since many of these decisions, market rates have increased substantially—as evidenced by the fact that top-billing partners at other litigation firms are now often charging well over $2,000 per hour (or, in the case of X Corp.'s firm in this litigation, $2,590).

1  *See* Dan Roe, *Top Big Law Partners Are Earning More Than $2,400 Per Hour, as Rates Continue*

2  *to Climb*, Am. Law. (Jan. 10, 2024), available at https://www.law.com/americanlawyer/

3  2024/01/10/top-restructuring-partners-are-earning-more-than-2400-per-hour-as-rates-continue-to-

4  climb/. By comparison, the rates charged here by KHF and CW attorneys are not only eminently

5  reasonable, but also substantially below prevailing rates in this community.

6      The proposed hourly rates are especially reasonable (indeed, low) when taking into account

7  "the novelty and complexity of the issues," "the quality of the representation," and "the results

8  obtained" in this particular case. *Graham-Sult*, 2012 WL 994754, at *3; *accord, e.g.*, *Herring*

9  *Networks*, 2021 WL 409724, at *4. As noted, X Corp.'s claims were unprecedented; other than X

10  Corp.'s subsequently filed suit against Media Matters, the parties in this litigation have yet to

11  identify a single analogous suit by a social media company over data collection for non-commercial

12  purposes such as research and reporting. Moreover, in its novel effort to circumvent "the burdens

13  of pleading a defamation claim," Dkt. 75 at 17, X Corp. utilized a complicated series of contracts,

14  including some that the CCDH Defendants had never seen and have yet to see, to string together a

15  convoluted series of contract and tort claims. Had this gambit succeeded, it would have chilled a

16  range of independent research and reporting into the content on social media platforms due to the

17  omnipresent threat of "at least tens of millions of dollars" in crushing liability. *Id.* at 42 & n.25

18  (quoting AC ¶¶ 70, 78). And in the face of these high stakes, the CCDH Defendants, through

19  counsel, filed a single joint motion that successfully disposed of X Corp.'s entire case at the

20  pleading stage, without leave to amend. For all these reasons, the requested hourly rates are clearly

21  reasonable.

22      **D.   The CCDH Defendants' Costs Are Reasonable**

23      Finally, the CCDH Defendants seek recovery of $1,670.12 in reasonable costs, as set forth

24  in the Quinn Declaration and the Williams Declaration, for $1,553.64 in legal research expenses

25  and $116.48 in courier costs incurred in connection with the anti-SLAPP motion. *See* Quinn Decl.

26  ¶¶ 37-40; Williams Decl. ¶¶ 9-12. These costs are plainly reasonable, particularly given that they

27  incorporate the global 25% percentage-of-claims reduction discussed *supra* Section V.B to account

28

for X Corp.'s dismissed federal CFAA claim (a reduction that, as noted, is likely to undercount the proportion of costs that are actually compensable under the anti-SLAPP statute).[5]

## VI.    CONCLUSION

For the foregoing reasons, the Court should award the CCDH Defendants reasonable attorney's fees and costs in the amount of $319,828.12, in addition to any additional fees and costs incurred in connection with preparing a reply and attending any hearing on this motion.

---

[5] As before, *see supra* note 3, this reduction has not been applied to any costs that relate solely to this motion for attorney's fees and costs, as all of those hours pertain to anti-SLAPP relief.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: April 8, 2024
      New York, New York

Roberta A. Kaplan*
John C. Quinn*
Matthew J. Craig (SBN 350030)
Amit Jain*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com
*admitted pro hac vice*

Marc S. Williams (SBN 198913)
Neil S. Jahss (SBN 162744)
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
213-232-5160
mwilliams@cohen-williams.com
njahss@cohen-williams.com

*Attorneys for Defendants Center for Countering Digital Hate, Inc. and Center for Countering Digital Hate Ltd.*