Roberta A. Kaplan*
John C. Quinn*
Matthew J. Craig (SBN 350030)
Amit Jain*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
mcraig@kaplanhecker.com
ajain@kaplanhecker.com
* admitted pro hac vice

*Attorneys for Defendants Center for
Countering Digital Hate, Inc. and
Center for Countering Digital Hate Ltd.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| X CORP., <br><br> Plaintiff, <br><br> v. <br><br> CENTER FOR COUNTERING DIGITAL HATE, INC., et al., <br><br> Defendants. | Case No. 3:23-cv-03836-CRB <br><br> **DECLARATION OF JOHN C. QUINN IN SUPPORT OF CCDH'S MOTION FOR FEES AND COSTS PURSUANT TO CAL. CODE CIV. PROC. § 425.16** |

I, John C. Quinn, declare as follows:

1.   I am a partner in the law firm Kaplan Hecker & Fink LLP ("Kaplan Hecker" or "KHF"), attorneys for Defendants Center for Countering Digital Hate, Inc. and Center for Countering Digital Hate Ltd. (collectively, the "CCDH Defendants"). I submit this declaration in support of the CCDH Defendants' motion for attorney's fees and costs pursuant to California Code of Civil Procedure § 425.16(c)(1). All statements in this declaration are based upon my personal knowledge and review of relevant documents, and, if called upon to testify, I could and would

testify to the facts set forth below.

**Kaplan Hecker's Retention and Defense Efforts**

2. On July 20, 2023, Plaintiff X Corp. sent a pre-filing letter to the CCDH Defendants, threatening suit under the Lanham Act, among other things. *See* **Exhibit A**. The CCDH Defendants retained Kaplan Hecker to respond to it. *See* **Exhibit B**.[1]

3. Kaplan Hecker is a New York City-based boutique litigation firm. We have been recognized as the 2024, 2022, 2021, and 2020 Boutique Firm of the Year nationwide by Benchmark Litigation. In 2019, Benchmark Litigation also recognized KHF as one of the 10 "Top Boutique Firms" in the country, just two years after the firm's founding. Our firm and partners have received numerous other commendations and awards from legal organizations and publications including The American Lawyer, the American Bar Association, Lawdragon, Best Lawyers, and a number of others.

4. On July 31, 2023, Plaintiff X Corp. filed this lawsuit against the CCDH Defendants and 50 Doe Defendants in the Northern District of California. *See* Dkt. 1. Pursuant to the existing engagement, the CCDH Defendants asked Kaplan Hecker to lead the defense of the suit. Kaplan Hecker facilitated an introduction to co-counsel at Cohen Williams LLP ("Cohen Williams" or "CW"), whom the CCDH Defendants also retained as local counsel.

5. On August 7, 2023, Plaintiff X Corp. filed an amended complaint. Among other things, the amended complaint added an additional defendant: the Stichting European Climate Foundation ("ECF").

6. To defend the CCDH Defendants against this lawsuit, KHF assembled a highly capable team of attorneys. The KHF team included Roberta A. Kaplan, a founding partner; myself; Matthew Craig, special counsel; Amit Jain, a senior associate; and Avisha Sabaghian, a law clerk. The CW team includes Marc Williams, a founding partner; and Neil Jahss, counsel. More information about each of these members of the team is provided below.

---

[1] For the avoidance of doubt, the CCDH Defendants do not seek fees or costs for work in connection with this pre-filing response; we provide this information only for context and background around the CCDH Defendants' engagement of Kaplan Hecker.

X CORP. V. CENTER FOR COUNTERING DIGITAL HATE, INC., ET AL. (NO. 3:23-CV-03836-CRB)
DECLARATION OF JOHN C. QUINN IN SUPPORT OF CCDH'S MOTION FOR FEES AND COSTS - 2

7.     All of these attorneys were necessary and reasonable for this litigation. Although X Corp.'s claims proved baseless, defending against them was far from simple. Indeed, the litigation was unprecedented: To our knowledge, no one had ever previously sued a nonprofit to seek such crushing damages based on non-commercial data collection for research purposes, public speech that flowed from this data collection, and third parties' reactions to this speech. Moreover, the operative complaint asserted four claims, and accused the CCDH Defendants of engaging in purportedly improper data collection in two distinct ways that allegedly implicated four different, lengthy contracts rife with technical terms—two of which the CCDH Defendants have yet to see. Furthermore, had X Corp. prevailed, its victory could have severely and permanently chilled good-faith research and reporting on harmful content hosted by social media platforms. Given the complexity of the issues and the high stakes, and based on my experience, I believe KHF staffed and litigated this case in a reasonable and efficient manner.

8.     Upon the filing of the original complaint, the KHF team immediately began to evaluate the complaint and amended complaint, consult with our clients, and consider and develop a potential anti-SLAPP motion to strike X Corp.'s three claims arising under state law (out of its four total claims). We promptly settled on an anti-SLAPP motion to strike these deficient state-law claims, which arose from acts in furtherance of the CCDH Defendants' exercise of their speech rights (including their newsgathering activity and their speech itself).

9.     Given the novelty of X Corp.'s theories, the complicated factual allegations, and the technical aspects of the dispute, drafting and filing the anti-SLAPP motion required substantial effort. KHF attorneys pored over the past and present terms of service for X Corp. and Brandwatch and analyzed the three CCDH reports on which X Corp.'s SLAPP suit centered. Our team also researched legal issues ranging from the procedural interplay between California's anti-SLAPP statute and the Federal Rules of Civil Procedure, to numerous substantive aspects of state contract and tort law, to the many state and federal statutes and constitutional protections that evinced a pro-transparency and pro-speech public policy cognizable under California contract law, to the scope of the First Amendment's protections against damages based on third-party reactions to protected speech.

10. KHF attorneys also worked to keep our clients, the CCDH Defendants, apprised of our progress and involved in litigation strategy and decision-making. The CCDH Defendants, in turn, assisted KHF attorneys in understanding the nature of CCDH's research and reporting and the technical aspects of the data collection that enabled that research and reporting.

11. In an effort to keep litigation costs low and to advance judicial economy, the KHF team also engaged productively with X Corp.'s counsel on two stipulations. The first stipulation, filed on October 2, 2023 and granted on October 3, 2023, set forth an agreed-upon briefing schedule and adjourned various discovery and case management deadlines until after the Court's rulings at the pleading stage. *See* Dkt. 24; Dkt. 30. The second stipulation, filed on November 9, 2023 and granted on November 15, 2023, allowed the CCDH Defendants to file a single, combined motion of no longer than 25 pages combining the CCDH Defendants' anti-SLAPP and motion to dismiss arguments, while enabling X Corp. to file a single memorandum in opposition of no longer than 35 pages combining its responses to the CCDH Defendants and any amicus briefs in support of the CCDH Defendants. *See* Dkt. 42; Dkt. 44.

12. The KHF team also attempted to narrow the litigation early, by identifying, and alerting opposing counsel to, key factual inaccuracies underlying counts two through four of X Corp.'s operative complaint (namely, its federal Computer Fraud and Abuse Act claim, its state-law claim for intentional interference with contractual relations, and its state-law claim for inducing breach of contract). *See* **Exhibit C** ("CCDH Letter"). On November 10, 2023, I sent the CCDH Letter to X Corp.'s counsel, attached and linked to evidence disproving specific allegations in the complaint, and urged counsel to withdraw counts two through four consistent with his duty of candor to the court. *See id.* at 1-5.

13. X Corp.'s counsel sent a letter back on November 15, 2023, which expressly refused to withdraw any claims, and was otherwise largely non-responsive. *See* **Exhibit D** ("X Corp. Letter"). The X Corp. Letter offered no specific defense of the allegations disproved by the evidence I appended to the CCDH Letter. Instead, it diverted to other contentions and inaccurately described the publicly available contents of CCDH's February 9, 2023 report. *See id.* at 1.

14. The CCDH Defendants filed a combined motion to dismiss and anti-SLAPP motion to strike on November 16, 2023. *See* Dkt. 47.

15. As relevant, the motion asserted two independent grounds that brought X Corp.'s claims doubly within the scope of the anti-SLAPP statute; five independent grounds for dismissal of X Corp.'s contract claim (including (1) the lack of a breach, (2) public policy, (3) X Corp.'s failure to allege damages cognizable under state law, (4) X Corp.'s failure to allege damages recoverable under the First Amendment, and (5) X Corp.'s failure to comply with Federal Rule of Civil Procedure 9(g)); five independent grounds for dismissal of X Corp.'s tort claims (including (1) lack of causation or inducement, (2) lack of any underlying breach, (3) lack of knowledge, (4) failure to allege damages recoverable under the First Amendment, and (5) failure to allege damages proximately caused by the purported interference or breach); an additional argument for dismissal of the Doe Defendants; and multiple arguments against leave to amend.

16. The CCDH Defendants received X Corp.'s 33-page opposition brief on December 22, 2023. *See* Dkt. 62. The CCDH Defendants, through KHF, prepared a reply brief that thoroughly rebutted X Corp.'s contentions, and filed that reply brief on January 10, 2024. *See* Dkt. 65.

17. On February 1, 2024, the CCDH Defendants received notice that the Court had scheduled a motion to dismiss hearing for February 23, 2024. *See* Dkt. 68. The KHF team immediately set to work preparing for oral argument. Due to the complexity of the technical and legal issues presented, I and the KHF team prepared additional written materials such as outlines and key case summaries, and engaged in numerous prep sessions and multiple moots. The wide-ranging argument, which the Court rescheduled for February 29, 2024, ultimately lasted over one and a half hours.

18. On March 25, 2024, the Court issued an order granting the CCDH Defendants' motion in full. *See* Dkt. 75.

19. Relevant here, the Court agreed that the anti-SLAPP statute applied, *see id.* at 12-21; found that X Corp. failed to demonstrate a probability of prevailing on its breach of contract claim on three of the five independent grounds argued by the CCDH Defendants (including (1) X

1  Corp.'s failure to allege damages cognizable under state law, (2) X Corp.'s failure to allege
2  damages recoverable under the First Amendment, and (3) X Corp.'s failure to comply with Rule
3  9(g)), *see id.* at 21-35; dismissed the tort claims on two of the five independent grounds argued by
4  the CCDH Defendants (including (1) lack of causation or inducement and (2) failure to allege
5  damages recoverable under the First Amendment), *see id.* at 49-51; dismissed the Doe Defendants,
6  *see id.* at 51; and denied leave to amend on two independent bases, *see id.* at 35-43, 51. Given
7  these ample bases for striking X Corp.'s state-law claims with prejudice, the Court declined to
8  reach the CCDH Defendants' other arguments. The Court's order favorably cited or quoted my
9  oral argument several times. *See id.* at 26, 40-43.

10  20. Also on March 25, 2024, the Court issued its Judgment in favor of the Defendants.
11  *See* Dkt. 77.

**Kaplan Hecker's Fees in Connection with the Anti-SLAPP Motion**

13  21. Together with this declaration, I submit as **Exhibit E** (the "Fees Spreadsheet") a
14  summary of the attorney's fees and other expenses incurred in connection with defending against
15  X Corp.'s state-law claims in this suit, including successfully litigating the CCDH Defendants'
16  anti-SLAPP motion to strike, and litigating this motion for attorney's fees.

17  22. As set forth in greater detail in the Fees Spreadsheet, the CCDH Defendants seek
18  to recover a total of $311,261.64 in fees and costs based on the amounts they were actually charged
19  for KHF's efforts.

20  23. The Fees Spreadsheet delineates the efforts that several partners and associates put
21  toward the CCDH Defendants' successful anti-SLAPP motion. In particular, it describes the tasks
22  performed by:

23      1. Two partners: Roberta A. Kaplan and myself;
24      2. One special counsel: Matthew J. Craig;
25      3. One senior associate: Amit Jain; and
26      4. One law clerk: Avisha Sabaghian.

27  24. As set forth below, the fees we request represent a discount of more than 50% as
28  compared to KHF's commercial rates.

25. The KHF website biographies of the attorneys who worked on this matter are also attached as **Exhibit F**. Those biographies are summarized below.

26. Roberta A. Kaplan is a founding partner of our firm and performed 10.9 hours of work in connection with the anti-SLAPP motion. Ms. Kaplan has over three decades of legal experience, including as a former partner at Paul, Weiss, Rifkind, Wharton & Garrison. She is a renowned litigator with extensive experience in commercial and constitutional litigation, and among other things successfully argued before the United States Supreme Court in the landmark case *United States v. Windsor*, 570 U.S. 744 (2013). Ms. Kaplan has been recognized as the "Attorney of the Year" by the New York Law Journal, "Litigator of the Year" by The American Lawyer, "Lawyer of the Year" by Above the Law, and "Most Innovative Lawyer of the Year" by the Financial Times. She was recently named to Forbes' inaugural list of America's Top 200 Lawyers, among many other awards and recognitions.

27. I am a partner of our firm and performed 52.2 hours of work in connection with the anti-SLAPP motion, including handling the oral argument. I have practiced law for more than twelve years and have significant experience with complex civil litigation, including large fraud cases, complex multi-jurisdictional litigation and arbitration proceedings, and progressive public interest and constitutional matters. I was one of KHF's founding attorneys, and I have been recognized as a "Rising Star" by the New York Law Journal, named in Crain's New York's "40 Under 40," and repeatedly recognized on Lawdragon's lists of "Leading Lawyers in America" and "Leading Litigators in America."

28. Mr. Craig, special counsel, performed 72.4 hours of work in connection with the anti-SLAPP motion. A 2013 graduate of New York University School of Law, *magna cum laude*, Mr. Craig has a decade of experience with both trial and appellate litigation. Mr. Craig has been recognized by Lawdragon on its list of "The Next Generation," and he is a former clerk for Judge Allyne R. Ross of the Eastern District of New York and Judge Gerard E. Lynch of the Second Circuit.

29. Mr. Jain, a senior associate, performed 181.9 hours of work in connection with the anti-SLAPP motion. A 2018 graduate of Yale Law School, Mr. Jain has a diverse range of

litigation experience as a criminal defense attorney with the Bronx Defenders, an impact litigator and policy counsel at the Asylum Seeker Advocacy Project, and a general civil litigator at both the trial and appellate level at KHF. He is a former clerk for Judge Diana Gribbon Motz of the Fourth Circuit and Justice Sonia Sotomayor of the Supreme Court of the United States.

30. Ms. Sabaghian, a law clerk and 2022 graduate of Harvard Law School, performed 169.7 hours of work on discrete research tasks in connection with the anti-SLAPP motion.

31. KHF attorneys (including myself) kept daily, contemporaneous time records containing descriptions of the work that we did and the amount of time that we spent in doing it. As a matter of general practice, I reviewed these time records to verify the accuracy, appropriateness and fairness of the bills incurred by the CCDH Defendants in connection with KHF's representation before invoicing the CCDH Defendants. For purposes of this motion, in certain instances where anti-SLAPP and non-anti-SLAPP-related tasks were grouped together into time entries, we drew inferences from other time entries and conservatively estimated the minimum amount of time that was spent solely on the compensable tasks listed below. In addition, in certain instances we revised time narratives to describe the work performed at a slightly higher level of generality, so as to avoid unnecessary risk of disclosure of potentially privileged information. (For the avoidance of doubt, it is neither our nor the CCDH Defendants' intention to waive any privilege or protection; in fact, we do not have authority to waive such privilege or protection and have instead been directed and instructed to maintain and assert such privilege and protection.)

32. As set forth in detail in the Fees Spreadsheet, and as explained in the accompanying memorandum of law, the underlying, compensable litigation efforts here included: (1) reviewing the complaint and amended complaint and identifying/developing a defense strategy; (2) researching and drafting the successful anti-SLAPP motion and supporting documents; (3) meeting and communicating with our clients about the defense strategy and the anti-SLAPP motion; (4) preparing the two stipulations relating to the anti-SLAPP motion; (5) researching and communicating with X Corp.'s counsel about the false allegations underlying counts two, three, and four of the operative complaint; (6) reviewing X Corp.'s opposition brief and researching and

drafting a reply in support of the successful anti-SLAPP motion; (7) preparing for and participating in oral argument on the anti-SLAPP motion; and (8) preparing this motion for attorney's fees and costs.

33. As illustrated in the Fees Spreadsheet, we have reduced the total hours spent on the first seven categories of tasks (*i.e.*, everything except this motion for attorney's fees and costs) by 25% (or, phrased differently, multiplied the hours by a factor of 0.75). We did this as a conservative (or perhaps the appropriate term is generous) means of accounting for the fact that one of X Corp.'s four claims arose under federal law and therefore was not subject to the anti-SLAPP motion. Notably however (and explaining the conservatism, or generosity, of the approach), X Corp.'s federal claim involved substantial factual and legal overlap with X Corp.'s state tort claims; all three arose out of the CCDH Defendants' allegedly unlawful use of a social-media monitoring tool created by Brandwatch.

34. The CCDH Defendants and their insurer have paid for all services set forth in the Fees Spreadsheet (except for those services related to the fee motion, for which payment is not yet due). For purposes of this fee motion, and as set forth in the Fees Spreadsheet, the CCDH Defendants seek the attorney's fees they were actually charged, which represent discounts of more than 50% as compared to KHF's commercial rates. Specifically, for 2023, the CCDH Defendants were charged an hourly rate of $950.00 for Ms. Kaplan's services; $900.00 for mine; $875.00 for Mr. Craig's services; $700.00 for Mr. Jain's services; and $550.00 for Ms. Sabaghian's services. For 2024, KHF offered the CCDH Defendants an additional discount, under which they were charged an hourly rate of $750.00 for Ms. Kaplan's services; $725.00 for mine; $700.00 for Mr. Craig's services; $575.00 for Mr. Jain's services; and $350.00 for Ms. Sabaghian's services.

35. KHF agreed to represent the CCDH Defendants at these rates, which again are far below our commercial rates (in some cases by nearly 60%), due to KHF's strong commitment to litigating in the public interest, our recognition of the burdens imposed by complex federal litigation on nonprofit defendants, and our appreciation of the high stakes this litigation posed for good-faith research and reporting efforts. Had KHF not represented the CCDH Defendants in this matter, I am confident we could have taken on a different client representation at our commercial

hourly rates.

36. The partners of KHF determine our billing rates based on the experience and skill level of our personnel, as well as our collective knowledge of the legal market. Based on my understanding of the relevant case law, my experience at KHF since its founding, and my familiarity with the rates charged by KHF's competitors, I am confident that the discounted rates that were charged by KHF in this case are significantly lower than the rates charged by other litigation firms and attorneys of comparable skill, reputation, and experience.

**Kaplan Hecker's Costs in Connection with the Anti-SLAPP Motion**

37. In addition to the attorney's fees discussed above, the CCDH Defendants incurred costs in connection with their anti-SLAPP motion. KHF maintains records of such costs in the regular course of business. I have reviewed KHF's record of costs for this case, and I am generally familiar with these records and the processes by which they are created and maintained.

38. The only KHF costs for which the CCDH Defendants seek recovery in connection with this matter are costs of legal research—specifically, the Westlaw and Bloomberg research costs set forth in the table below, all of which were paid by the CCDH Defendants or their insurer:

| **Month** | **Expense** | **Total Monthly Costs** |
|---|---|---|
| August 2023 | Westlaw (legal research) | $1,293.66 |
| September 2023 | Westlaw (legal research) | $623.34 |
| October 2023 | Westlaw (legal research) | $102.45 |
| October 2023 | Bloomberg (legal research) | $1.20 |
| January 2024 | Westlaw (legal research) | $50.87 |
| **Total** | | $2,071.52 |

39. These costs are correctly stated, allowable by law, and were necessarily incurred.

40. For purposes of this motion, we have again applied a 25% discount to any expenses before this Court's Order in order to account for X Corp.'s federal CFAA claim (and we have again exempted the costs pertaining solely to this motion for attorney's fees and costs from this discount). With that in mind, the CCDH Defendants seek $1,553.65 in costs they paid to KHF.

**The CCDH Defendants' Conferral with X Corp.**

41.     On Friday, April 5, 2024, at 12:00 PM Pacific Time, Mr. Jain and I met and conferred via telephone with opposing counsel, James Jonathan Hawk, for the purpose of attempting to resolve any disputes with respect to the motion. The parties did not reach agreement on the motion.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 8, 2024                                                                                          John C. Quinn