# EXHIBIT B

KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0883
DIRECT EMAIL       rkaplan@kaplanhecker.com

July 31, 2023

**VIA EMAIL**

Alex Spiro
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
alexspiro@quinnemanuel.com

Dear Alex:

We represent Center for Countering Digital Hate Inc. (CCDH), and its CEO, Imran Ahmed. CCDH is a nonprofit organization that works to stop the spread of online hate and disinformation through innovative research, public campaigns, and policy advocacy.[1] Mr. Ahmed is the founder and CEO of CCDH as well as an expert on issues relating to hate and disinformation on social media platforms.

We write in response to the ridiculous letter you sent our clients on behalf of X Corp., which operates the Twitter (or the new "X") platform, dated July 20, 2023. (A copy of your July 20 letter is attached.) In that letter, you claim that CCDH has supposedly made "inflammatory, outrageous, and false or misleading assertions about Twitter" and suggest it has engaged in some sort of conspiracy "to drive advertisers off Twitter by smearing the company and its owner." These allegations not only have no basis in fact (your letter states none), but they represent a disturbing effort to intimidate those who have the courage to advocate against incitement, hate speech and harmful content online, to conduct research and analysis regarding the drivers of such disinformation, and to publicly release the findings of that research, even when the findings may be critical of certain platforms.

As you know, CCDH recently published an article concerning the proliferation of hate speech on Twitter and the company's failure to address it.[2] That article involved CCDH's review of 100 hateful tweets that contained racist, homophobic, neo-Nazi, antisemitic, or conspiracy content—*i.e.*, content that plainly violates Twitter's own policies in this regard.[3] One tweet, for example, stated that "black culture has done more damage [than] the [Ku Klux] [K]lan ever did." Another referenced the white supremacist ideology known as "replacement theory," claiming that

---

[1] *About*, Ctr. for Countering Digit. Hate, https://counterhate.com/ (accessed July 25, 2023).

[2] *Twitter Fails to Act on 99% of Twitter Blue Accounts Tweeting Hate*, Ctr. for Countering Digit. Hate (June 1, 2023), https://counterhate.com/research/twitter-fails-to-act-on-twitter-blue-accounts-tweeting-hate/.

[3] *Hateful Conduct*, Twitter (Apr. 2023), https://help.twitter.com/en/rules-and-policies/hateful-conduct-policy.

KAPLAN HECKER & FINK LLP

2

"[t]he Jewish Mafia wants to replace us all with brown people." And yet another explicitly encouraged violence against the LGBTQ+ community, suggesting that LGBTQ+ rights activists need "IRON IN THEIR DIET. Preferably from a #AFiringSquad." CCDH staff reported all 100 tweets using Twitter's own designated reporting tool. Four days later, 99 of the 100 tweets identified by CCDH remained available on Twitter.

Tellingly, after CCDH published this article, Twitter did not spend its time and resources addressing the hate and disinformation that CCDH had identified, despite Twitter's purported commitment to addressing hate speech on its platform.[4] Instead, your clients decided to "shoot the messenger" by attempting to intimidate CCDH and Mr. Ahmed.[5] In your July 20 letter, for example, you write that "CCDH's claims in [its report] are false, misleading, or both"—although you point to no actual inaccuracy—"and they are not supported by anything that could credibly be called research"—although the article describes the basis for its conclusions and the methodology it used. While it is true that CCDH did not undertake a review of the "500 million tweets" that you claim are posted on Twitter each day, CCDH never claimed to have done so. In fact, under Mr. Musk's leadership, Twitter has taken steps to curtail research on the platform.[6] To criticize CCDH for being too limited in its research while simultaneously taking steps to close the platform off to independent research and analysis is the very height of hypocrisy.

But your July 20 letter doesn't stop there. You go on to state that there is "no doubt that CCDH intends to harm Twitter's business" and warn that you are "investigating" whether CCDH has violated Section 43(a) of the Lanham Act.[7] That threat is bogus and you know it. None of the examples cited in your letter constitutes the kind of advertisement or commercial speech that would trigger the Lanham Act.[8] To the contrary, the statements you complain about constitute political, journalistic, and research work on matters of significant public concern, which obviously are not constrained by the Lanham Act in any way.[9] Moreover, as a nonprofit working to stop online hate, CCDH is obviously not in competition with Twitter, which makes your allegations of a Lanham Act injury even more fanciful.[10] Your assertion that the goal in CCDH's research and reporting is to benefit Twitter's competitors also ignores the fact that CCDH has published critical, highly-publicized reports about other platforms, including Instagram, Facebook, and TikTok.[11] Simply put, there is no bona fide legal grievance here. Your effort to wield that threat anyway, on

---

[4] *See Hateful Conduct*, Twitter (Apr. 2023), https://help.twitter.com/en/rules-and-policies/hateful-conduct-policy.

[5] Just days before X Corp.'s letter, Mr. Musk posted a tweet to his nearly 150 million followers that referred to Mr. Ahmed as "rat." @elonmusk, Twitter (July 18, 2023), https://twitter.com/elonmusk/status/1681280344870342657.

[6] Eduardo Medina & Ryan Mac, *Musk Says Twitter Is Limiting Number of Posts Users Can Read*, N.Y. Times (July 1, 2023), https://www.nytimes.com/2023/07/01/business/twitter-rate-limit-elon-musk.html ("[Elon Musk] has been vocal about his dislike for organizations that scrape Twitter and use tweets for research ….").

[7] 15 U.S.C. § 1125.

[8] *See, e.g.*, *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950, 952 (11th Cir. 2017).

[9] *See, e.g.*, *Wojnarowicz v. Am. Fam. Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990) ("Section 43(a)] has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service.")

[10] *See, e.g.*, *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020).

[11] *Hidden Hate*, Ctr. for Countering Digit. Hate (Apr. 6, 2022), https://counterhate.com/research/hidden-hate/ (Instagram); *The Disinformation Dozen*, Ctr. for Countering Digit. Hate (Mar. 24, 2021), https://counterhate.com/research/the-disinformation-dozen/ (Facebook); *Deadly by Design*, Ctr. for Countering Digit. Hate (Dec. 15, 2022), https://counterhate.com/research/deadly-by-design/ (TikTok).

KAPLAN HECKER & FINK LLP                                                 3

a law firm's letterhead, is a transparent attempt to silence honest criticism. Obviously, such conduct could hardly be more inconsistent with the commitment to free speech purportedly held by Twitter's current leadership.

Your clients, of course, are free to pursue litigation if they choose to do so. But they should be mindful of the risks involved in bringing frivolous claims to intimidate thoughtful critics and stifle legitimate commentary on issues of clear public interest. And they should also know that CCDH is fully prepared to defend itself and its ability to continue pursuing its public mission. If your clients do file suit, please be advised that CCDH intends to seek immediate discovery regarding hate speech and misinformation on the Twitter platform; Twitter's policies and practices relating to these issues; and Twitter's advertising revenue. In that event, a court will determine for itself the truth of the statements in our client's report in accordance with the time-tested rules of civil procedure and evidence.

In the meantime, CCDH will not be bullied by your clients. It intends to continue its research and its reporting. And in line with its mission to protect online civil liberties and ensure accountability, CCDH intends to publish Twitter's letter and this response. Our clients believe that open and transparent public discussion of these issues is essential, and they will not shirk from their responsibilities in the face of Twitter's efforts to threaten and silence inconvenient facts or viewpoints with which your clients do not agree.

We caution against any further attempts by X Corp. to threaten or intimidate our clients, reserve all rights, and demand that X. Corp. take immediate steps to preserve all documents and other information (including any and all text messages to or from Mr. Musk and other senior executives) concerning disinformation and hate speech on Twitter's platform, Twitter's content moderation policies and its enforcement of those policies, and Twitter's advertising business and revenues.

Very truly yours,

Roberta A. Kaplan