# EXHIBIT C

**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL     212.763.0883
DIRECT EMAIL    rkaplan@kaplanhecker.com

November 10, 2023

**BY EMAIL**

J. Jonathan Hawk
McDermott Will & Emery LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
jhawk@mwe.com

       Re:  *X Corp. v. Center for Countering Digital Hate, Inc. et al.*, No. 3:23
          Civ. 03836 (N.D. Cal.)

Dear Jon:

  I write on behalf of Defendants Center for Countering Digital Hate, Inc. ("CCDH") and Center for Countering Digital Hate Ltd. to inform you that X Corp.'s case against Defendants is premised on a profound misunderstanding (or perhaps misstatement) of the relevant facts. More specifically, X Corp.'s amended complaint (in paragraphs 40-42 and elsewhere) alleges that CCDH engaged in underhanded and secretive information-gathering efforts by surreptitiously using Brandwatch services without Brandwatch's knowledge or consent. These allegations of unauthorized, clandestine access form the factual basis of three of the four counts alleged in the amended complaint.

  But these claims are simply false. In fact, multiple documents (many of which are publicly available) make it plain that X Corp.'s conspiracy theory does not hold water. Contrary to the false assertions in the amended complaint, CCDH did not use Brandwatch surreptitiously. Rather, it was an authorized user with its own login credentials, a fact of which Brandwatch was completely aware. Take, for example, the attached email correspondence from May 2022 between CCDH and Brandwatch, which establishes that CCDH had Brandwatch login credentials, and that Brandwatch not only knew that CCDH had a Brandwatch login, but actively facilitated CCDH's use of that login and Brandwatch's services. *See* Ex. A.

  Under the operative Brandwatch Master Subscription Agreement, CCDH's access to Brandwatch in these circumstances was transparent, fully disclosed, and completely above-board. At all relevant times, the Master Subscription Agreement defined a "User" as simply "an

KAPLAN HECKER & FINK LLP

2

individual that [the] Customer (directly or indirectly) has authorized to use the Services."[1] As your complaint itself alleges, ECF (the Customer) authorized CCDH (the User) to use the Brandwatch services. *See* ECF 10 ¶¶ 11, 38. And, as the attached email correspondence proves, so did Brandwatch.

This foundational inaccuracy is not the only one in X Corp.'s amended complaint. Indeed, X Corp. claims that CCDH's February 9, 2023 report "cites several data points for which non-public Brandwatch sources are quoted." ECF 10 ¶ 51. But CCDH's report itself reveals the falsity of this allegation. The only Brandwatch data in the February 9, 2023 report—the average Twitter ad price per thousand impressions—comes from a Brandwatch blog post that does not require a subscription or login and remains publicly viewable to this day.[2]

For these reasons, Counts 2, 3, and 4 of X Corp.'s amended complaint—all of which are fundamentally based on and arise from purportedly unauthorized Brandwatch access—are clearly incorrect. Because Brandwatch was aware of and facilitated CCDH's access (consistent with its Master Subscription Agreement), the access at all relevant times was not "without authorization" under the CFAA. By the same token, CCDH had no reason to know that its Brandwatch access was somehow inconsistent with any contract between Brandwatch and X Corp. In short, the demonstrable falsity of the core allegations underlying Counts 2, 3, and 4 means that those Counts do not plausibly allege a claim upon which relief can be granted.

Consistent with your duty of candor to the court and your obligations under Federal Rule of Civil Procedure 11, *see, e.g.*, *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (en banc), X Corp. should withdraw these claims and disclaim any reliance on allegations of unauthorized access to Brandwatch moving forward. Defendants reserve all rights in the event that X Corp. fails to dismiss Counts 2, 3, and 4 and should these errors remain uncorrected.

Very truly yours,

Roberta A. Kaplan

---

[1] *See, e.g.*, Brandwatch Master Subscription Agreement (Oct. 15, 2022), https://www.brandwatch.com/wp-content/uploads/2023/04/MSA-Brandwatch-Oct-15-2022.pdf. The earlier versions of the Master Subscription Agreement, all of which are publicly available at the URL in Paragraph 35 of the operative complaint, contain the same language.

[2] *See* Brandwatch, *How Much Do Social Media Ads Cost on Facebook, Instagram, Twitter, and LinkedIn?* (Feb. 22, 2022), https://www.brandwatch.com/blog/how-much-do-social-media-ads-cost-on-facebook-instagram-twitter-and-linkedin/.

# EXHIBIT A



**Center for Countering Digital Hate Info <info@counterhate.co.uk>**

## Brandwatch | Unable to log in
3 messages

**Dámaris Queiruga** <dqueiruga@brandwatch.com>  Thu, May 12, 2022 at 1:11 PM
To: Josh Feldberg <josh.feldberg@gsccnetwork.org>, info@counterhate.com

Hi Callum,

My name is Dámaris and I am ECF's Customer Success Manager here at Brandwatch. My Support Team let me know that you reached out to them because you are unable to log into your Brandwatch account.

This is because today our Engineers are upgrading your account to our new data segmentation (which involves us migrating all your existing Rules, Categories and Tags) and no one can log into the account while this complex process is being completed.

The work will be finalised by the end of the day and will be happy to notify you once this has happened so you can log back in.

Cc'ing @Josh Feldberg, our main point of contact at ECF, for visibility.

Best wishes,

**Dámaris Queiruga** | Senior Customer Success Manager
dqueiruga@brandwatch.com

**NEW YORK** | BOSTON | CHICAGO | AUSTIN | TORONTO | BRIGHTON | **LONDON** | COPENHAGEN | BERLIN | STUTTGART | FRANKFURT | PARIS | MADRID | BUDAPEST | SOFIA | CHENNAI | SINGAPORE | SYDNEY | MELBOURNE



A Cision company | Read more here

---

**Center for Countering Digital Hate Info** <info@counterhate.com>  Thu, May 12, 2022 at 1:14 PM
To: Dámaris Queiruga <dqueiruga@brandwatch.com>
Cc: Josh Feldberg <josh.feldberg@gsccnetwork.org>
Bcc: Tom Lavelle <tom@counterhate.com>, Callum Hood <callum@counterhate.com>

Thanks Damaris - that makes sense, we'll look out for an update from you.

Best wishes,

Callum

[Quoted text hidden]

---

**Dámaris Queiruga** <dqueiruga@brandwatch.com>  Thu, May 12, 2022 at 3:23 PM
To: Center for Countering Digital Hate Info <info@counterhate.com>, claudia.solomons@gsccnetwork.org
Cc: Josh Feldberg <josh.feldberg@gsccnetwork.org>

Hi Josh, Callum & Claudia,

I am delighted to inform you that your upgrade to the new segmentation UI has been successful and you can now log back into the platform.

Our upgrader app shows success and no errors, but I would encourage you to double check to ensure that your setup looks correct and also have a play around the new categories segmentation workflow. If you spot any issues, please

let me know ASAP.

I have attached a 2 pager with some additional information around what the upgrade means and how this will help you as well as the relevant help centre article + **video** here. I hope this helps!

Best wishes,

**Dámaris Queiruga**  |  Senior Customer Success Manager
dqueiruga@brandwatch.com

NEW YORK  |  BOSTON  |  CHICAGO  |  AUSTIN  |  TORONTO  |  BRIGHTON  |  **LONDON**  |  COPENHAGEN  |  BERLIN  |  STUTTGART  |  FRANKFURT  |  PARIS  |  MADRID  |  BUDAPEST  |  SOFIA  |  CHENNAI  |  SINGAPORE  |  SYDNEY  |  MELBOURNE



A Cision company  |  Read more here

[Quoted text hidden]

📄 **New segmentation upgrade.pdf**
584K